Before STATE INDUSTRIAL BOARD, Respondent.

In the Matter of the Claim of ADOLF LANDAU, Respondent, for Compensation under the Workmen's Compensation Law, *v.* E. W. BLISS COMPANY, Employer, and THE TRAVELERS INSURANCE COMPANY, Insurance Carrier, Appellants.

Third Department, December 28, 1921.

**Workmen's Compensation Law — partial loss of vision of left eye — claimant struck in eye by small chip from casting — award based on loss of seventy per cent of vision not sustained where evidence shows existence of cataract at time of injury.**

An award based on the loss of seventy per cent of the useful vision of claimant's left eye cannot be sustained, where it appears that at the time of the injury, which was alleged to have been caused by a small chip from a casting striking claimant's eye, the claimant had a cataract in his left eye which occupied the entire pupilary area, and that the injury was so slight that claimant lost no time from his work because thereof, for it does not appear that the loss of vision was due to the injury.

The award cannot be sustained on the testimony of the claimant that he had had no trouble with his eye prior to the accident, for that might have been true though the cataract then existed, nor on the unsworn statement of a physician, not based on any stated facts but on hearsay information only, that there was a loss of vision due to the accident.

APPEAL by the defendants, E. W. Bliss Company and another, from an award of the State Industrial Board, entered in the office of said Board on April 16, 1921.

*Benjamin C. Loder* [*E. C. Sherwood* and *William B. Davis* of counsel], for the appellants.

*Charles D. Newton,* Attorney-General [*E. C. Aiken,* Deputy Attorney-General, of counsel], for the respondents.

WOODWARD, J.:

The State Industrial Commission or Board finds as conclusions of fact that on May 1, 1919, Adolf Landau, the claimant, was engaged in the regular course of his employment for the E. W. Bliss Company, and that " while assisting a fellowworkman, chipping casting at the plant of his employer, a

APP. DIV.—VOL. CXCIX.    10

chip of said casting struck the claimant in his left eye;" that "prior to May 1, 1919, claimant had in his left eye an irregularly shaped sub-capsular opacity, which occupied the entire pupilary area, known as a cataract." Having found this alleged opacity which, according to Webster, is "the state of being opaque; the quality of a body which renders it impervious to the rays of light; want of transparency, opaqueness," and which must, of necessity, have prevented the claimant from getting anything like full vision from the left eye, the Commission or Board proceeds to find that "prior to May 1, 1919, claimant in no way suffered from or experienced loss of vision in his left eye;" that "the chip from the casting, which struck the claimant in his left eye, so aggravated the pre-existing condition of said eye as to cause the claimant to lose, as a result thereof, seventy per cent of the useful vision of said left eye."

Upon the basis of the above finding the Commission or Board has made an award for eighty-nine and three-fifths weeks at the rate of sixteen dollars and ninety-two cents per week, and closed the case. The employer and the insurance carrier appeal.

The appellants admit that the claimant was struck in the eye by a small piece of casting, but contend that the evidence fails to show that the loss of vision is due to the alleged injury. Starting with the finding that there was an opacity of the left eye before this accident occurred, which "occupied the entire pupilary area," constituting what is known as a cataract, it would seem to be necessary to produce some reasonably clear testimony to show that the trifling accident, which did not prevent the claimant from continuing his work without loss of time, as he admits, was the cause of the loss of vision. A cataract, as defined by Webster, is "an opacity of the crystalline lens, or of its capsule, which prevents the passage of the rays of light and impairs or destroys the sight," and the crystalline lens seems to be what we know as the pupilary area, which was entirely occupied by this cataract before the accident. (See Webster, Eye.) If there was a cataract "occupying the entire pupilary area" before the accident then it must be that the vision was impaired or destroyed at that time, and there is no medical testimony in this case

to dispute this finding of fact and necessary conclusion. The claimant testified that he lost no time by reason of the accident, and answering questions of Deputy Commissioner Gompers he said that " Dr. Behan and other doctors told me that the blow was so big that it has formed a cataract and to-day [a year and a half after the accident] I can't see hardly anything with my left eye." Mr. Gompers asked: " And you saw all right before the accident? " The answer was: " Sure thing." Of course this question and answer was not confined to the left eye; the claimant may have had a complete vision in his right eye. Indeed the record shows that the right eye is entirely normal, so that any general testimony that the claimant could see, that he did not use glasses, etc., is apart from the question involved here, and that is whether the impaired vision of the left eye, as it is conceded to exist to-day, is the result of the accident. The claimant did testify that he never had any trouble with his eye before this accident; that he never noticed anything the matter with his eye; that he could read, and that to-day he could not read the paper, but none of these things goes to the question at issue. A cataract is not usually painful. It was easy enough for the claimant to go on using his left eye with a developing cataract without being conscious of the defective vision in that eye. He may be in entire good faith in his testimony, but if the finding of the Commission or Board that there was a cataract before the accident is well founded then there must have been a substantial loss of vision, and the assumption of the award that he has lost seventy per cent of a normal vision by reason of the accident is without evidence to sustain it.

Dr. Behan, who appears to have been in the employ of the E. W. Bliss Company, made a report to the Commission (now Board) as to the conditions found on the 2d day of May, 1919, the day following the accident. He reports that he found the right eye normal; that the left eye showed loss of vision of twenty-seventieths, which apparently corresponds substantially with the present condition, and that there was the cataract found· by the Commission or Board to have existed before the accident; that there was " no swelling of lens observed," and that an X-ray of left eye was negative — that there was no foreign substance in the eye. On May 21,

1919, he reports substantially the same conditions, and on the 17th of March, 1920, he reports that a " complete examination of eyes this date reveals no change in findings of May 2, 1919, as noted above, nor in the refraction results noted on May 21, 1919," and declares: " It is my opinion that the lenticular changes noted in the left eye, existed prior to the injury of May 1, 1919, for the reason that this eye showed no signs of activity within twenty-four hours after the alleged injury, and because the lenticular changes noted were in existence within twenty-four hours of said injury and were still present without change on March 17, 1920, when I last examined this patient."

Dr. Torok, who qualified as an expert, reported that he examined the claimant's eyes on the 25th day of February, 1920, about nine months after the accident, and found the right eye normal and that the left eye, normal in some respects, has over the lens " an irregularly shaped sub-capsular opacity which occupies the entire pupilary area," and that the vision is about one-fifth of normal. He says that the claimant is " suffering from a partial cataract in his left (injured) eye. This condition may possibly be due to such an accident as that which occurred to him on May 1, 1919." This doctor was called as a witness by the appellants, and testified that he received a history of the accident from the claimant; that the claimant told him he was hit in the eye by a large piece of casting. He says that he thought the accident did not produce the condition which he found; says that the testimony showing that there was only a small piece of iron thrown into the claimant's eye, and that there was no reduction, indicates that the condition was not produced by the accident; that a cataract would be produced only by a very severe blow, or by a small piece entering the eye, injuring the lens, in the interior of the eyeball. His attention being called to Dr. Behan's report he says that it shows " that the day after the accident the eye was absolutely free from inflammation, and he had exactly the same condition of the eye that I found a year later, which would be very much in favor of the opinion that the opacity of the lens was present before the accident." This same witness testified that the cataract was not likely to result in twenty-four hours under the claimant's history of the accident, especially as there was no inflammation.

It is obvious that the Commission and Board relied upon this testimony as to the existence of the cataract before the accident, and the same witness discredits the theory that the injury produced the loss of vision, for he says that he found the conditions the same as those reported by Dr. Behan upon his examination a year later. Both of these physicians agree that the resulting loss of vision was not due to the particular accident.

The only possible foundation for this award must be found in the testimony of the claimant that he had had no trouble with his eye prior to the accident (a thing that by no means contradicts the established fact that the cataract existed at the time of the accident, and that the left eye showed no essential difference between the examination made by Dr. Behan one day after the accident and that of Dr. Torok nine months or more later) and the unsworn statement of Dr. Copeland, who assumes that the claimant was struck in the left eye by a piece of casting; that the eye became inflamed, and that the claimant had had a loss of vision since then, and that " at the present time, however, the loss of vision due to the accident is from sixty to seventy per cent." He gives no facts to justify these assumptions; his information is purely hearsay, so far as appears, and he merely concludes that there has been a loss of vision due to the accident. It seems to us entirely clear that this case comes within the reasoning of *Gentelong* v. *American Hide & Leather Co.* (194 App. Div. 9, 12) and *McCarthy* v. *Globe Automatic Sprinkler Co.* (196 id. 619), and that the award may not stand.

The award appealed from should be reversed.

JOHN M. KELLOGG, P. J., COCHRANE, H. T. KELLOGG and VAN KIRK, JJ., concur.

Award reversed and matter remitted to the Board.