MIRIAM S. GRISWOLD *v.* METROPOLITAN LIFE INSURANCE
COMPANY.

February Term, 1935.

Present: POWERS, C. J., SLACK, MOULTON, THOMPSON, and
SHERBURNE, JJ.

Opinion filed July 15, 1935.

*Marvelle C. Webber* and *Christopher A. Webber* for the defendant.

*Alban J. Parker* for the plaintiff.

MOULTON, J. The plaintiff is the beneficiary under a policy of accident insurance, issued by the defendant, insuring her late husband, James H. Griswold, against "the results of bodily injuries sustained while this policy is in force and caused directly and independently of all other causes by violent and accidental means," and providing also that the policy should not cover death caused wholly or partly by infection "excepting only septic infection of and through a visible wound caused directly and independently of all other causes by violent and accidental means." Verdict and judgment below were for the plaintiff, and the cause is before us on the defendant's exceptions.

At the close of the evidence, the defendant moved for a directed verdict, which was denied subject to exception. The several grounds for the motion may be epitomized by saying that it was alleged that there was no evidence tending to show that the death of the insured was caused from septic infection of and through a visible wound caused directly and independently of all other causes by violent and accidental means.

That the insured died of septic infection is not questioned. The dispute concerns the nature and cause of the in-

jury, and the cause of the subsequent infection and death. As to these matters the evidence, taken most favorably for the plaintiff, tended to show the following: On Friday, April 28, 1933, the insured was chopping kindling wood at a chopping block some thirty to forty feet from the house. A witness, who observed him through a window, testified that, as he was chopping, a stick of wood flew up, and it "looked as though it hit him in the face." The insured immediately came into the house and asked for a clean cloth, which he took and held against the junction of his lip and nose, near the opening of his nostril, and when he took the cloth away there were spots of blood upon it. The plaintiff did not look at the insured's lip, because he would not let her do so, saying that it was nothing. But from this testimony the jury would be justified in finding that there was an abrasion of the skin which permitted the blood to escape, and hence a visible wound, caused by the impact of the stick.

■ ■ On the following Tuesday the insured complained of pain at the base of his nose. Swelling appeared at the spot where he had held the cloth. A physician who was consulted on the Wednesday, found an abrasion, at the junction of the membranous tissue of the nose and lip, containing a drop or two of pus. The swelling rapidly increased and spread until his face became discolored and swollen beyond recognition. Pains developed in his side and back, along with very high temperature. He was taken to the hospital and nourishment administered through a tube, because he could not open his mouth. He died of acute septicæmia on Wednesday, May 10. The infection was the usual type that is introduced into the body only where there is a break in the skin, and, according to an expert, it was extremely probable that it had been introduced by and through an abrasion at the nose suffered on April 28. Upon this evidence it was permissible for the jury to find that the septic infection was "of and through a visible wound," as provided in the policy. It is true that there was evidence, on the part of the defendant, tending to show that the insured had had a boil in his nose some eight weeks before the accident, and that the infection might have been caused by this or some other means, but the weight of the evidence is not for consideration upon this question; it is enough if there is evidence fairly and reasonably tending to support the plaintiff's claim, and the effect of modifying

■

evidence is to be excluded. *Ste. Marie* v. *Wells,* 93 Vt. 398, 399, 108 Atl. 270.

■ We come now to the question whether it can be said that the injury was caused by violent and accidental means. That it was violent seems beyond question, and is not disputed, but the defendant makes the point that, since the act of the insured in chopping the wood was voluntary and intentional, and nothing appeared to show that it was not performed exactly as intended, with no slip or mishap, the means were not accidental, although the result might be so described. This is the first time that this question has been raised before us, and a somewhat extended examination of the decisions in other jurisdictions will be profitable.

The leading case, to which practically all the authorities refer, is *U. S. Mutual Accident Association* v. *Barry,* 131 U. S. 100, 33 L. ed. 60, 67, 9 Sup. Ct. 755, 762, wherein the rule is thus stated: "If a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result affected by accidental means; but that if, in the act which precedes the injury, something unforeseen, unexpected, unusual, occurs which produces the injury, then the injury has resulted through accidental means." From this statement of the law two diverse and irreconcilable views have developed. It is said in *Caldwell* v. *Travelers' Ins. Co.*, 305 Mo. 619, 267 S. W. 907, 39 A. L. R. 56, 61: "There are two clearly defined lines of cases on this question. One holds that, where an unusual or unexpected result occurs by reason of the doing by insured of an intentional act, where no mischance, slip, or mishap occurs in doing the act itself, the ensuing injury or death is not caused through accidental means; that it must appear that the means used was accidental, and it is not enough that the result may be unusual, unexpected, or unforeseen. The other line of cases holds that, where injury or death is the unusual, unexpected, or unforeseen result of an intentional act, such injury or death is by accidental means, even though there is no proof of mishap, mischance, slip, or anything out of the ordinary in the act or event which caused such injury or death."

The former or strict view is concisely expressed in *Kimball* v. *Massachusetts Accident Company,* 44 R. I. 264, 117 Atl. 228, 230, 24 A. L. R. 726, thus: "In determining that an injury occurred by 'accidental means,' it should appear that the cause or means governed the result and not the result the cause; and

that, however unexpected the result might be, no recovery could be allowed under such a provision unless there was something unexpected in the cause or means which produced the result * * * when a man is injured while doing merely what he intends to do, he is not injured by accidental means, unless the course of his action has been interrupted or deflected by some unforeseen or unintended happening.'' Accidental means and accidental cause are synonymous expressions. *Caldwell* v. *Travelers' Ins. Co.*, 305 Mo. 619, 267 S. W. 907, 39 A. L. R. 56, 80; *Bryant* v. *Continental Casualty Co.*, 107 Tex. 582, 182 S. W. 673, L. R. A. 1916E, 945, 949. The distinction is made between an accidental injury or death and an injury or death caused by accidental means. In *Olinsky* v. *Railway Mail Assn.*, 182 Cal. 669, 189 Pac. 835, 14 A. L. R. 784, 786, it is put this way: ''Where the death is the result of some act, but was not designed and not antici-pated by the deceased, though it be in consequence of some act voluntarily done by him, it is accidental death. Where death is caused by some act of the deceased not designed by him, or not intentionally done by him, it is death by accidental means. In other words, accidental death is an unintended and unde-signed result, arising from acts done; death by accidental means is where the result arises from acts unintentionally done.''

Accordingly it has been held that death or injury did not result from accidental means, in the following cases: Where a rupture was caused in piling heavy mail sacks, *Fane* v. *National Assn. Ry. Mail Clerks*, 199 App. Div. 145, 188 N. Y. S. 222, 223; where a blood vessel was ruptured by the habitual act of shak-ing a furnace, *Husbands* v. *Indiana Trav. Acc. Assn.*, 194 Ind. 586, 133 N. E. 130, 35 A. L. R. 1184; where a strain, resulting in death, was caused by pushing a boat into the water, and casting a seine net, *Fulton* v. *Metropolitan Casualty Co.*, 19 Ga. App. 127, 91 S. E. 228, 229; where the insured pushed a table which tilted, and to prevent its fall, he seized it, injuring himself, *Curry* v. *Federal Life Ins. Co.*, 221 Mo. App. 616, 287 S. W. 1053; where deceased, in using a nasal douche, drew violently into his nostril, and thus caused virulent germs to enter his brain through the middle ear, *Smith* v. *Travelers' Ins. Co.*, 219 Mass. 147, 149, 106 N. E. 607, L. R. A. 1915B, 812; where the insured, while in a feeble condition, carried his own baggage and was in-jured, *Cobb* v. *Preferred Mut. Acc. Assn.*, 96 Ga. 818, 22 S. E. 976; when the injury was the result of voluntarily alighting

from a moving train, *Whitehead* v. *Ry. Mail Assn.* (C. C. A.), 269 Fed. 25, certiorari denied, 255 U. S. 570, 65 L. ed. 791, 41 Sup. Ct. 375; *Southard* v. *Ry. Pass. Assur. Co.*, 34 Conn. 574, 576, 578, Fed. Cas. No. 13,182; where the injured, while enfeebled and suffering from high blood pressure, suddenly raised his head, thus causing a blood rupture of his retina, destroying the sight of one eye, *Stone* v. *Fidelity & Casualty Co.*, 133 Tenn. 672, 182 S. W. 252, L. R. A. 1916D, 536, 538, Ann. Cas. 1917A, 86; where acute dilation of the heart was caused by the voluntary effort of cranking an automobile, *Carswell* v. *Railway Mail Assn.* (C. C. A.), 8 Fed. (2d) 612; where death was caused by eating decayed oranges, it being the duty of the insured to separate the good fruit from the bad, *Martin* v. *Interstate Business Men's Acc. Assn.*, 187 Iowa, 869, 174 N. W. 577, 578; where peritonitis was caused by the movement of the muscles in riding a bicycle, *Appel's Case*, 86 App. Div. 83, 83 N. Y. S. 238; where failure of a weak heart ensued from the attempt to eject a drunken man from the premises, *Scarr's Case* (1905), 1 K. B. 387; where the injury was the result of the voluntary act of carrying a sack of potatoes in the usual way, *Metropolitan Life Ins. Co. Landsman* (Del. Super.), 165 Atl. 563, 567; where the insured ruptured his heart in assisting others in carrying a cellar door, *Shanberg* v. *Fidelity & Casualty Co.* (C. C. A.), 158 Fed. 1, 5, 9 L. R. A. (N. S.) 1206; where heart failure ensued from an attempt to lift a bale of cotton, *Pledger* v. *Business Men's Acc. Assn.* (Tex. Civ. App.), 197 S. W. 889, 891; where heart failure was caused by the act of aiding in carrying the casket at a funeral, *Rock* v. *Travelers' Ins. Co.*, 172 Cal. 462, 156 Pac. 1029, L. R. A. 1916E, 1196; where the insured had tuberculosis, and in reaching up to close a window shutter, ruptured an artery, *Feder* v. *Iowa State Trav. Men's Assn.*, 107 Iowa, 538, 78 N. W. 252, 43 L. R. A. 693, 695, 70 A. S. R. 212; where the deceased took a cold plunge while heated, in consequence of which his heart dilated, *New Amsterdam Casualty Co.* v. *Johnson*, 91 Ohio St., 155, 110 N. E. 475, L. R. A. 1916B, 1018; where the insured injured his side while bowling, and appendicitis developed, *Lehman* v. *Great Western Acc. Assn.*, 155 Iowa, 737, 133 N. W. 752, 42 L. R. A. (N. S.), 562, 567; where, in the ordinary operation of plowing, the plow struck some unforeseen obstruction, and the handle striking the insured, caused a rupture, *Ogilvie* v. *Ætna Life Ins. Co.*, 189 Cal. 406, 209 Pac. 26, 26

A. L. R. 116, 120. And see, among other cases, *Clarkson* v. *Union Mut. Casualty Co.*, 201 Iowa, 1249, 207 N. W. 132, 133; *Smouse* v. *Iowa Trav. Men's Assn.*, 118 Iowa, 436, 92 N. W. 53, 54.

On the other hand, an equal, if not a greater, number of decisions uphold the more liberal view, comprehensive statements of which are found in *Western Commercial Travelers' Assn.* v. *Smith* (C. C. A.), 85 Fed. 401, 40 L. R. A. 653, 656, and *Lickleider* v. *Iowa Traveling Men's Assn.*, 184 Iowa, 123, 166 N. W. 363, 168 N. W. 884, 3 A. L. R. 1295, 1300, 1301.

To quote from the former case: " * * * The significance of this word 'accidental' is best perceived by a consideration of the relation of causes to their effects. The word is descriptive of means which produce effects which are not their natural and probable consequences. The natural consequence of means used is the consequence which ordinarily follows from their use—the result which may be reasonably anticipated from their use, and which ought to be expected. The probable consequence of the use of given means is the consequence which is more likely to follow from their use than it is to fail to follow. An effect which is the natural and probable consequence of an act or course of action is not an accident, nor is it produced by accidental means. It is either the result of actual design, or it falls under the maxim that every man must be held to intend the natural and probable consequence of his deeds. On the other hand, an effect which is not the natural or probable consequence of the means which produced it, an effect which does not ordinarily follow and cannot be reasonably anticipated from the use of those means, an effect which the actor did not intend to produce and which he cannot be charged with the design of producing under the maxim to which we have adverted, is produced by accidental means. It is produced by means which were neither designed nor calculated to cause it. Such an effect is not the result of design, cannot be reasonably anticipated, is unexpected, and is produced by an unusual combination of fortuitous circumstances; in other words, it is produced by accidental means."

And the Lickleider Case: "There is, however, another alleged definition which has had a degree of judicial sanction, which ought not to be passed without notice. According to this definition, if correctly interpreted by counsel for the de-

fense, an injury happening to the insured through his own voluntary act is not an accident, nor is his hurt to be attributed to accidental means—a proposition which is wholly at variance with every statement of the true rule as illustrated in the numerous authorities above cited. It may be, and it is, true that if the insured does a voluntary act, the natural, usual, and to-be-expected result of which is to bring injury upon himself, then a death so occurring is not an accident in any sense of the word, legal or colloquial, and it is only when thus limited that the rule so stated has any proper application. * * * To say that the deceased in the case at bar did just what he attempted and intended to do, that is, he attempted to remove and did remove the tire from the wheel, and therefore there was no accident or accidental means producing his injury, is to beg the whole question and to ignore the well-established meaning of words. Says Mr. Cooley in 4 Briefs on Ins. 3156: 'Accident insurance companies do business mostly with the common people, and the term "accident" as used in these policies, should be defined according to the ordinary and usual understanding of its significance.' It makes no difference whether the injured man or some other person voluntarily sets in motion the first of a series of events which in connected line of causation results in his injury or death. If, to use the language I have quoted, the resulting injury and violence to him 'unexpectedly took place,' or was an 'unexpected result from a known cause,' or was produced 'without design or intention,' or was 'an unusual and unexpected result, attending the performance of a usual or necessary act,' or was an 'event happening without the concurrence of the will of the person by whose agency it was caused,' or if it was 'caused or produced without design,' it falls directly within the letter and spirit of the definition which has been placed upon the words by the most competent lexicographers, as well as by our most eminent jurists who have given attention thereto.''

Some decisions put the rule in terms of negligence or assumption of risk on the part of the injured person, and hold him to the results which, as a reasonable man, he should have foreseen as likely to flow from his voluntary act. In a recent case (1931), *Norris* v. *New York Life Insurance Co.* (C. C. A.), 49 Fed. (2d) 62, 63, it is said (citing the Barry Case): ''The sole question to be considered here is whether the death of the

insured resulted directly and independently of all other causes from bodily injury effected through an accidental cause. There have been a number of decisions, on this question, by the various courts both state and federal. A study of these decisions leads us to the conclusion that the rule governing this class of cases is correctly stated to be that the cause is not accidental, if the insured, in doing what he did, should have foreseen the danger of being injured. That which cannot reasonably be expected to follow as a result of an act is accidental. In other words, an insured may not voluntarily assume the risk of that which it is apparent, or should be apparent to him, acting as a reasonable man, would result in injury or death. Unless a reasonable man could reach a different conclusion as to the probable result of his conduct, there is no question for the jury.''

And in *Mehaffy* v. *Provident Life & Acc. Ins. Co.*, 205 N. C. 701, 172 S. E. 331, 333: ''It seems that 'accidental means' implies 'means' producing a result which is not the natural and probable consequence of such means.'' See, also, 6 Cooley, Briefs on Insurance, 5234; *Losleben* v. *California State Life Ins. Co.*, 133 Cal. App. 550, 24 Pac. (2d) 825, 826; *Robinson* v. *U. S. Health & Acc. Ins. Co.*, 192 Ill. App. 475, 477, 478; *Fidelity & Casualty Co.* v. *Stacey's Exr.* (C. C. A.), 143 Fed. 271, 5 L. R. A. (N. S.) 657, 661, 6 Ann. Cas. 955; *Horan* v. *Prudential Ins. Co.*, 104 Pa. Super., 474, 159 Atl. 69, 70.

The following decisions illustrate the application of the liberal doctrine: Where the insured, suffering from a weak heart, lifted a stove, and death ensued, it was held that, if his act was attended with an unexpected, unusual, unintended, not reasonably to be foreseen result, the death was caused by accidental means, *Robinson* v. *U. S. Health & Acc. Ins. Co.*, 192 Ill. App. 475, 477, 478; where the insured voluntarily took a nonpoisonous, harmless remedy, in a manner to produce an irritating gas, but which was not expected or intended to produce harmful results, *Gohlke* v. *Hawkeye Commercial Men's Assn.*, 198 Iowa, 144, 197 N. W. 1004, 35 A. L. R. 1177, 1183; where insured intentionally took an excess dose of drug, but was not conscious that it would be harmful, *Carter* v. *Standard Acc. Ins. Co.*, 65 Utah, 465, 238 Pac. 259, 41 A. L. R. 1495, 1518, 1519; *Hodgson* v. *Preferred Acc. Ins. Co.*, 100 Misc. 155, 165 N. Y. S. 293, 297; where a hernia was caused by the voluntary act of pulling the front belly plugs on a locomotive engine, *Inter-Ocean*

*Casualty Co.* v. *Jordan* (1933), 227 Ala. 383, 150 So. 147, 148; where the insured dislocated a cartilage of his kneejoint in stooping to pick up a marble rolling on the floor, *Hamlyn* v. *Crown Acc. Ins. Co., Ltd.* (1893), 1 Q. B. 750, 754; where a sprain of the muscles of the back resulted from lifting heavy weights in the ordinary course of insured's business, *Horsfall* v. *Pacific Mut. Life Ins. Co.*, 32 Wash. 132, 135, 72 Pac. 1028, 63 L. R. A. 425, 98 A. S. R. 846; where the insured died from a blow received in a voluntary boxing match, his death being the improbable and unexpected result of his engaging in the match, *New York Life Ins. Co.* v. *Gustafson* (C. C. A.), 55 Fed. (2d) 236, 237, 82 A. L. R. 729; where a mail clerk ruptured a blood vessel while lifting a heavy mail sack, *Young* v. *Railway Mail Ass'n*, 126 Mo. App. 325, 103 S. W. 557, 563; a rupture from lifting a heavy timber, *Montzoukos* v. *Mutual Ben. Ass'n*, 69 Utah, 309, 254 Pac. 1005, 1007, 1008; where a surgeon in performing an operation punctured an artery, not in the natural place, in the insured's body, *Ætna Life Ins. Co.* v. *Brand* (C. C. A.), 265 Fed. 6, 13 A. L. R. 657, 660, certiorari denied, 253 U. S. 496, 64 L. ed. 1031, 40 Sup. Ct. 587; where the insured, who had a weak heart, died from inhaling gas during the extraction of a tooth, *Schleicher* v. *General Acc., etc., Corp.*, 240 Ill. App. 247, 253; where the death was the result of the use of infected dental instruments, this condition being unknown, *Horton* v. *Travelers' Ins. Co.*, 45 Cal. App. 462, 187 Pac. 1070, 1071; where the death was caused by the administration of novocaine, the deceased having had an idiosyncrasy for this drug, which was very rare and in his case unsuspected, *Mutual Life Ins. Co.* v. *Dodge* (C. C. A.), 11 Fed. (2d) 486, 59 A. L. R. 1290; where a disinfectant was improperly used upon an abrasion of the skin, *Continental Casualty Co.* v. *Willis* (C. C. A.), 28 Fed. (2d) 707, 709, 61 A. L. R. 1069; where the deceased used a septic hypodermic needle upon himself, *Townsend* v. *Commercial Travelers' Acc. Ass'n*, 231 N. Y. 148, 131 N. E. 871, 17 A. L. R. 1001, 1004; where a substance not known to be poison was voluntarily swallowed, *Woods* v. *Provident, etc., Co.*, 240 Ky. App. 398, 42 S. W. (2d) 499, 501; *Zurich Gen'l Acc., etc., Co.* v. *Flickinger* (C. C. A.), 33 Fed. (2d) 853, 854, 68 A. L. R. 161; *Grosvenor* v. *Fidelity & Casualty Co.*, 102 Neb. 629, 168 N. W. 596, 597. In *Fidelity & Casualty Co.* v. *Stacey's Exr.* (C C. A.), 143 Fed. 271, 5 L. R. A. (N. S.) 657, 661, 6 Ann. Cas.

955; *Cory* v. *Woodmen Acc. Co.*, 333 Ill. 175, 164 N. E. 159, 162; and *Mutual Life Ins. Co.* v. *Distretti*, 159 Tenn. 138, 17 S. W. (2d) 11, the respective deaths were sustained in brawls in each of which the deceased was the aggressor; the death was held not to have been caused by accidental means, but upon the ground that death or bodily injury ought, under the circumstances, to have been foreseen. Other cases following this view of the law are: *Francis* v. *International Travelers' Ass'n* (Tex. Civ. App.), 260 S. W. 938, 943; *Brown* v. *Continental Casualty Co.*, 161 La. 229, 237, 108 So. 464, 45 A. L. R. 1521; *Rowe* v. *United Commercial Trav. Assn.*, 186 Iowa, 454, 461, 172 N. W. 454, 4 A. L. R. 1235; *Hoosier Casualty Co.* v. *Royster* (Ind. App.), 142 N. E. 18, 19; *Henderson* v. *Travelers' Ins. Co.*, 262 Mass. 522, 160 N. E. 415, 417, 56 A. L. R. 1088; *Lewis* v. *Ocean Acc. & Guarantee Co.*, 224 N. Y. 18, 120 N. E. 56, 7 A. L. R. 1129, 1130 (per Cardozo, J.); *Railway Mail Ass'n* v. *Dent* (C. C. A.), 213 Fed. 981, 983, L. R. A. 1915A, 314; *Western Commercial Travelers' Assn.* v. *Smith* (C. C. A.), 85 Fed. 401, 40 L. R. A. 653; *Hutton* v. *State Acc. Ins. Co.*, 267 Ill. 267, 270, 108 N. E. 296, L. R. A. 1915E, 127, Ann. Cas. 1916C, 577; *Jensma* v. *Sun Life Assurance Co.* (C. C. A.), 64 Fed. (2d) 457, 462, certiorari denied, 289 U. S. 763, 77 L. ed. 1505, 53 Sup. Ct. 795; *Pope* v. *Prudential Ins. Co.* (C. C. A.), 29 Fed. (2d) 185, 186; *Rowden* v. *Travelers Protective Ass'n*, 201 Ill. App. 295, 301, and further reference may be had to annotations, 7 A. L. R. 1131; 14 A. L. R. 788; 35 A. L. R. 1191; 42 A. L. R. 243; 45 A. L. R. 1528.

Some attempt has been made to distinguish cases where poison has been taken by mistake, or where infected instruments have been used, by saying that the lack of knowledge of the dangerous quality or condition involved furnishes an accidental element in the act which constitutes the means causing the injury. But it would seem that this course of reasoning applies with equal force to the cases, considered sound by those who advocate this view, where death has resulted by an unknown weakness or other physical condition brought into fatal operation by some casual act of the deceased, and in which such death has been held not to have been caused by accidental means.

The conflict in authority is well illustrated in cases where death or injury has occurred from sunstroke or heat prostration. In some of these the voluntary act of the insured in going about his business or pleasure in the heat of the sun has been con-

sidered sufficient to deny recovery, upon the theory that the sunstroke, although unexpected, was not caused by accidental means. The most recent decision to this effect appears to be *Landress* v. *Phoenix Mutual Life Ins. Co.*, 291 U. S. 491, 78 L. ed 934, 54 Sup. Ct. 491, 90 A. L. R. 1382 (but with a strong dissent by Cardozo, J.). Among others are *Continental Casualty Co.* v. *Pittman*, 145 Ga. 641, 89 S. E. 716; *Pack* v. *Prudential Casualty Co.*, 170 Ky. 47, 185 S. W. 496, L. R. A. 1916E, 952, 956. But the weight of authority is the other way, and holds that death by sunstroke is caused by accidental means, although the insured has voluntarily exposed himself to the sun. *Bryant* v. *Continental Casualty Co.*, 107 Tex. 582, 182 S. W. 673, L. R. A. 1916E, 945, 950; *Continental Casualty Co.* v. *Clark*, 70 Okla. 187, 173 Pac. 453, L. R. A. 1918F, 1007, 1011; *Elsey* v. *Fidelity & Casualty Co.*, 187 Ind. 447, 120 N. E. 42, L. R. A. 1918F, 646, 648; *Richards* v. *Standard Accident Ins. Co.*, 58 Utah, 622, 200 Pac. 1017, 17 A. L. R. 1183, 1192; *Lower* v. *Metropolitan Life Ins. Co.*, 111 N. J. Law, 426, 428, 168 Atl. 592, 593; *Hawkinson* v. *Order of United Commercial Travelers* (Tex. Civ. App.), 20 S. W. (2d) 101; *Higgins* v. *Midland Casualty Co.*, 281 Ill. 431, 439, 118 N. E. 11; *U. S. Fidelity, etc., Co.* v. *Hoflinger*, 185 Ark. 50, 45 S. W. (2d) 866, 867; *Continental Casualty Co.* v. *Bruden*, 178 Ark. 683, 11 S. W. (2d) 493, 61 A. L. R. 1192, 1195; and see annotations, 7 A. L. R. 1132, 17 A. L. R. 1183 (in which it is said that, by the weight of authority and apparently by the better reasoned cases, sunstroke, suffered unexpectedly, is an injury caused by accidental means), 61 A. L. R. 1197.

We need not give separate consideration to those cases where the jury were permitted to infer that some slip or unintended act had taken place and become the cause of the injury. *Standard Life & Acc. Ins. Co.* v. *Schmaltz*, 66 Ark. 588, 53 S. W. 49, 74 A. S. R. 112; *Bell* v. *State Life Ins. Co.*, 151 Ga. 57, 105 S. E. 846, 847, affirmed 26 Ga. App. 332, 106 S. E. 213; *Maryland Casualty Co.* v. *Massey* (C. C. A.), 38 Fed. (2d) 724, 725, 71 A. L. R. 1428; *Hoosier Casualty Co.* v. *Royster*, 196 Ind. 629, 149 N. E. 164, 42 A. L. R. 239; *Atlanta Acc. Assn.* v. *Alexander*, 104 Ga. 709, 30 S. E. 939, 42 L. R. A. 188, 189; *Young* v. *Railway Mail Assn.*, 126 Mo. App. 325, 103 S. W. 557, 563. There is no claim here that any slip or mischance occurred in the act of delivering the blow of the axe in chopping the wood.

It will be helpful to examine the syntax of the clause stating the rule in the Barry Case, which is, as we have seen, the leading authority, and may be regarded as the foundation of the doctrine of "accidental means." Again to quote the material part of it: "If a result is such as follows from ordinary means, voluntarily employed, in a not unusual and unexpected way, it cannot be called a result effected by accidental means." The punctuation of this sentence is extremely important in the ascertainment of its meaning, and must not be neglected. See *State* v. *Lapan*, 101 Vt. 124, 133, 141 Atl. 686. In *Arguin* v. *Industrial Commission*, 349 Ill. 220, 181 N. E. 613, 615, and in *Ætna Life Ins. Co.* v. *Vandecar* (C. C. A.), 86 Fed. 282, 286, the statement is quoted without punctuation. In *Caldwell* v. *Travelers' Ins. Co.*, 305 Mo. 619, 267 S. W. 907, 921, 39 A. L. R. 56, 80, it is said that the words "in a not unusual and unexpected way" plainly modify the verb "employed," and not the preceding verb "follows," and that "If the language could possibly be made plainer, it would be by saying that, where the means which causes the injury was voluntarily employed in the usual and expected way, the resulting injury is not produced by accidental means, even though such resulting injury is entirely unusual, unexpected and unforeseen." We cannot, however, accept this as the proper grammatical construction of the clause. It appears to ignore the commas, which separate the phrase "in a not unusual and unexpected way" from the context. If the ordinary means voluntarily employed in such a way were intended to be the test, there would be no necessity for the punctuation. We think that the phrase last quoted modifies the verb "follows," and makes the meaning as though it were thus stated "Follows in a not unusual and unexpected way from ordinary means voluntarily employed." Under this construction it is the logical conclusion that, where such a result follows in an unusual and unexpected way, it has been caused by accidental means. Such is the practical construction placed upon the statement of the rule by what appears to be the weight of authority. In commenting upon the Barry Case, it is said in 5 Joyce on Insurance (5th ed.) par. 2863, p. 4949: "The Court could not have intended to say more than this: that an 'accident' must not only be unforeseen, but must also be something which happens out of the usual course of things, something unusual, fortuitous,

an unusual event, effect, result, not ordinarily following the performance of an act and not naturally to be expected."

As Mr. Justice Cardozo says in his dissenting opinion in *Landress* v. *Phoenix Mut. Life Ins. Co., supra,* 291 U. S. 491, 78 L. ed. 934, 54 Sup. Ct. 461, 463, 90 A. L. R. 1382: "The attempted distinction between accidental results and accidental means will plunge this branch of the law into a Serbonian Bog." And in *Brown* v. *Continental Casualty Co.,* 161 La. 229, 108 So. 464, 466, 45 A. L. R. 1521, 1526, is this: "We do not believe that the doctrine stated, making a distinction between 'accidental death or injury' and 'death or injury by accidental means,' means that, under a policy of insurance against death or injury by accidental means, the insurance company is not liable for an accidental death or injury resulting from a voluntary act in which the insured did not intend or anticipate a fatal or injurious result." The term "accidental means," as used in the policy, is to be interpreted according to the usage of the average man. *Wiger* v. *Mutual Life Ins. Co.,* 205 Wis. 95, 236 N. W. 534, 538; *Bennett* v. *Travelers' Protective Assn.,* 123 Neb. 31, 241 N. W. 781, 782. It is employed in its common significance of happening unexpectedly, without intention or design. *Bohaker* v. *Travelers' Ins. Co.,* 215 Mass. 32, 102 N. E. 342, 46 L. R. A. (N. S.) 543, 545. "'Any unusual and unexpected event attending the performance of a usual and necessary act,' whether the act be performed by the party injured or by another, is ordinarily and usually understood to be an event which happened by accident." *Young* v. *Railway Mail Ass'n,* 126 Mo. App. 325, 103 S. W. 557, 562. And thus Cardozo, J., in *Lewis* v. *Ocean Accident & Guarantee Corp.,* 224 N. Y. 18, 120 N. E. 56, 7 A. L. R. 1129, 1130: "Unexpected consequences have resulted from an act which seemed trivial and innocent in the doing * * *. Probably it is true to say that in the strictest sense, and dealing with the realm of physical nature, there is no such thing as an accident * * *. But our point of view in fixing the meaning of this contract must not be that of the scientist. It must be that of the average man * * *. Such a man would say that the dire result, so out of proportion to its trivial cause, was something unforeseen, unexpected, extraordinary, an unlooked-for mishap, and so an accident. This test—the one that is applied in the common speech of men—is also the test to be applied by the courts." Probably we may add to the above, it

is also true to say that every happening which in common speech we call an accident will, if traced backwards through the sequence of events, be found to have its origin in some voluntary human act.

■ This is a reasonable mode of interpretation. Uncertainty in the significance of a term used in an insurance policy is to be resolved in favor of the insured and against the company. *Stanyan* v. *Security Mut. Life Ins. Co.,* 91 Vt. 83, 86, 99 Atl. 417, L. R. A. 1917C, 350; *Brink & Co.* v. *Merchants', etc., Ins. Co.,* 49 Vt. 442, 457. "The insurer, most familiar with the subject, chooses the words of his undertaking, and it is not unjust to take them in the sense conveyed to the ordinary reader, nor to hold against him in case of real, substantial doubt." *Railway Mail Assn.* v. *Dent* (C. C. A.), 213 Fed. 981, 983, L. R. A. 1915A, 314, 315. If the insurer wished that the terms "accident" and "accidental means" should have different meanings the contract of insurance should give the insured warning of that fact. *Travelers' Protective Assn.* v. *Stephens,* 185 Ark. 126, 49 S. W. (2d) 364, 366. "The very purpose of accident insurance is to protect the insured against accidents which occur when he is going about his business or attending to his work or affairs in the usual way without any thought of being injured or killed, and when there is no probability, in the ordinary course of business experience, that he will meet with accident or death. The reason why men secure accident insurance is to protect them against unforeseen and unexpected accidents that may happen in the ordinary course of their lives, and when they are pursuing in the usual way their daily vocations, or doing in the ordinary way the things that men do in the common, everyday affairs of life. Nearly all accidents happen when people are going about their business in the usual way and are voluntarily doing the things before them to do." *Pack* v. *Prudential Casualty Co.,* 170 Ky. 47, 185 S. W. 495, 499, L. R. A. 1916E, 952, 956. Almost the same language is found in *Elsey* v. *Fidelity & Casualty Co.,* 187 Ind. 447, 120 N. E. 42, L. R. A. 1918F, 646, 647. And indeed, "if an insured, at the time he applied for accident insurance, was made to understand that his right to recover would hinge upon such fine distinctions as the difference between 'an accidental death' and a death 'by accidental means' he would probably conclude that the purchase of such a policy would be a hazardous investment, and one which he ought not to

make." *Carter* v. *Standard Acc. Ins. Co.*, 65 Utah, 465, 238 Pac. 259, 275, 41 A. L. R. 1495; and see annotation, 17 A. L. R. 1183.

Of course, the term "accidental means" is dependent for its application upon the particular facts presented. What would be an unusual, unexpected, or unforeseen consequence in some circumstances, would be the usual, the expected, and in all human probability, the foreseen result in another situation. *Davilla* v. *Liberty Life Ins. Co.*, 114 Cal. App. 308, 299 Pac. 831, 833. But in the instant case the flying up of the stick, and its impact upon the face of the insured, was plainly an unforeseen, unintended and not a probable consequence of his act. It was an accident, and hence the injury was caused by accidental means. The motion for a verdict was properly denied.

Indeed, there is yet another approach to the problem in this case. There are two decisions which are factually in point. In *Rowden* v. *Travelers' Protective Assn.*, 201 Ill. App. 295, the insured pulled at the limb of a tree, to get it out of the line of his vision in setting a line of fence posts. The limb broke and the insured fell backwards, sustaining injuries from which he died. It was held (page 301) that while he intended to remove the limb from his line of sight, there was no intention on his part to fall, and so the injury was caused by accidental means. In *Western Commercial Travelers' Assn.* v. *Smith* (C. C. A.), 85 Fed. 401, 40 L. R. A. 653, death resulted from an infection in an abrasion of the skin of the foot, caused by wearing new shoes. The wearing of the shoes, said the court, was intentional, but the abrasion was not, and "it was in itself an accidental result, but it then became the cause of the further injury, and thus was quite plainly an accidental cause." So here, even if we apply the strict rule and say that the flying of the piece of wood was merely the accidental result of the voluntary act of chopping, still being accidental in nature, it became the cause of the blow and the consequent abrasion. Thus it became the accidental means of the injury and death. We may repeat what we have said to the effect that probably all accidental happenings can be traced through the sequence of events to some voluntary act. But this does not attach the quality of the act to every succeeding occurrence of which it is thus the origin.

A hypothetical question put to a medical witness called by the plaintiff was permitted, subject to the defendant's excep-

tion. The objection as briefed is that it assumed that a wound or abrasion near the insured's lip was caused on April 28, 1933, and that there was no evidence tending to support this assumption. But this objection is untenable because, as we have seen, the evidence was such that the jury would have been justified in finding that such an injury occurred upon the day mentioned.

Another exception relates to the failure of the court to comply with a request to charge, which raises the same question which we have discussed at length in connection with the motion for a directed verdict and does not require separate treatment.

*Judgment affirmed.*

Powers, C. J. (dissenting). The law of this case as laid down in the majority opinion is tersely stated therein as follows: "It was an accident, and hence the injury was caused by accidental means." To reach this conclusion is to ignore the plain terms of the contract involved, eliminate all distinction between "accident" and "accidental means," confuse cause and effect, and allow the latter to control and give character to the former. To such a result, I cannot agree; and my views are so deepseated that I feel constrained to give expression to them.

I shall first give attention to cases relied upon by the majority. Of these, one group—twenty-three in number—is especially stressed. An analysis of these cases will disclose the weakness of the support they afford the majority.

Of them, seven are from inferior or intermediate federal courts, and their value as authorities is utterly eliminated by *Landress* v. *Phoenix Mutual Life Ins. Co.,* 291 U. S. 491, 78 L. ed. 934, 54 Sup. Ct. 461, 90 A. L. R. 1382, decided March 5, 1934, to which further reference will be made. Two of the cases are from Iowa. There is a strange inconsistency in the Iowa cases as I read them, and it is rather difficult to decide just what the law of this subject is in that state. The Lickleider Case, cited by the majority, was this: The insured was changing a tire on an automobile when he suffered a fatal injury. In his efforts to pull off the tire, it suddenly slipped onto him, catching him in an awkward pose, and, in his struggle to handle it, he received his injury. The record presents a plain case of an intervening fortuitous circumstance which changed the entire character of the cause of the accident. This is shown by what

the court says in its opinion: "But it is equally apparent," says the court, "that the tire gave way or came loose with unexpected suddenness, causing him (insured) to stagger or fall back from the stooped and strained position he was occupying, and in our judgment it was open to the jury to find from all these circumstances that in this involuntary and undesigned movement, so unexpectedly produced, he sustained a strain or injury to some of his vital organs, which proved fatal. A death so produced would be accidental both in cause and in effect." I have no quarrel with this proposition. Such a death would be by accidental means.

Among the authorities relied upon in the above case, are *United States Mut. Acc. Assn.* v. *Barry*, 131 U. S. 100, 33 L. ed. 60, 9 Sup. Ct. 755, which is full authority for my position here, though it is frequently cited by those who accept the views of the majority; *Young* v. *Railway Mail Assn.*, 126 Mo. App. 325, 103 S. W. 557, a case expressly overruled as hereinafter shown; *Standard Accident Ins. Co.* v. *Schmaltz*, 66 Ark. 588, 53 S. W. 49, 74 A. S. R. 112, a case much like the Lickleider Case, and for the same reason, the case of an intervening fortuitous circumstance; *Fetter* v. *Fidelity & Casualty Co.*, 174 Mo. 256, 73 S. W. 592, 61 L. R. A. 459, 97 A. S. R. 560, another case of an intervening fortuitous circumstance, the slipping of a pole which the insured was using to raise a window, which caused him to fall forward to his injury; *Western Commercial Travelers' Assn.* v. *Smith* (C. C. A.), 85 Fed. 401, 40 L. R. A. 653, a case rendered useless by the Landress Case; and *Hanley* v. *Fidelity & Casualty Co.*, 180 Iowa, 805, 161 N. W. 114, still another plain case of intervening fortuitous cause, the tipping of a box which the insured was using in his work, which caused him to fall to his injury. So if it can be said that the Lickleider Case affords any real support to the majority's conclusion, its foundation is too unstable to be much relied upon.

But in *Lehman* v. *Great Western Acc. Assn.*, 155 Iowa, 737, 133 N. W. 752, 753, 42 L. R. A. (N. S.) 563, the insured ruptured a blood vessel while bowling. The opinion is by Judge McClain, a distinguished jurist and text-writer, who says: "Our inquiry must be limited to the more concrete question, arising under a policy of accident insurance, as to what is an injury caused solely by external, violent, and accidental means; for the defendant company had the right to limit its liability so as

to exclude injuries not of that character.'' Further on, he says: ''Finally, it is to be borne in mind that in this case there is no evidence whatever of any slipping or falling, or any straining of muscles, other than the intentional strain put upon them in the voluntary and intentional act of bowling. Such a strain was not an accidental strain, and if it produced an unintentional result and consequent injury, nevertheless the resulting injury and not the means producing it, was accidental.'' Judgment for the defendant was affirmed. The opinion presents a candid and convincing statement of the law I am contending for. *Carnes* v. *Iowa State, etc., Assn.*, 106 Iowa, 281, 76 N. W. 683, 68 A. S. R. 306, was a case of death by morphine. It was held that the burden was on the plaintiff to show that the cause of death was accidental, and, if the decedent took just as much morphine as he intended to take, but misjudged its effect, there could be no recovery. For failure of proof a verdict for the plaintiff was reversed.

In *Smouse* v. *Traveling Men's Assn.*, 118 Iowa, 436, 92 N. W. 53, the insured ruptured a blood vessel in attempting to remove his night shirt. He became entangled in the garment, and, in his efforts to get it off, he suffered the fatal injury. The case is unsatisfactory and confused. To me, it presents an intervening fortuitous circumstance, and the man's struggle seems to have been more or less involuntary. But the general tenor of the opinion favors my views of the question in hand.

In *Payne* v. *Fraternal Acc. Assn.*, 119 Iowa, 342, 93 N. W. 361, the insured was run over by a freight car. His policy covered injuries occurring ''through external, violent, and accidental means.'' The court said: ''An accident, in the sense we are here called upon to consider the expression, means a result the inducing cause for which was not put in motion by the voluntary and intentional act of the person injured.''

In *Clarkson* v. *Union Mutual Casualty Co.*, 201 Iowa, 1249, 207 N. W. 132, 133, the rule is thus stated: ''All of our cases hold that it is not sufficient that there was an accidental * * * result only, but that the means must have been accidental; that is, involuntary and unintentional. If the injury suffered by appellee resulted from an act intentionally and purposely done, without more, the disability that followed does not come within the plain term of the policy.'' There were circumstances in the

case that made the question of what caused the injury one for the jury, but the law announced supports me in this dissent.

From these cases, it appears that the Iowa court correctly stated the law in practically all of its cases, and I confidently assert that the law of that state is with me.

Returning to the cases cited in support of the majority opinion:

Two are from Utah, and I agree that the law as applied in that state is with the majority, though the Carter Case states the rule correctly.

One is from North Carolina, but it affords little support to the majority. On the contrary the law therein laid down is mostly in my favor. The insured died under rather suspicious circumstances, and it was claimed that he died of poisoning. The coroner found that he died ''from some 'poisonous substance taken internally.' '' And the question, as stated by the court, was whether this finding was ''sufficient evidence to warrant recovery upon the policy and ward off a non-suit?'' The liability clause of the policy was like the one in hand. ''Therefore,'' says the court, ''in order to warrant recovery for death in such event, such death must not only be accidental but must be produced by 'accidental means.' There is abundant authority for the proposition that death by inadvertent poisoning or by taking poison through mistake constitutes 'accidental means' within the meaning of clauses similar to the one forming the basis of this suit.'' The court then quotes from *Olinsky* v. *Railway Mail Assn.*, 182 Cal. 669, 189 Pac. 835, 14 A. L. R. 784, as follows: ''It may be treated as established by the great weight of authority that an injury is not produced by accidental means where it is the direct, though unexpected, result of an ordinary act in which the insured intentionally engages.'' And from *U. S. Mut. Acc. Assn.* v. *Barry,* 131 U. S. 100, 121, 33 L. ed. 60, 9 Sup. Ct. 755, as follows: ''That if a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but that if, in the act which precedes the injury, something unforeseen, unexpected, unusual occurs which produces the injury, then the injury has resulted through accidental means.'' Upon these and other authorities the court concludes —and here is where it slipped—that '' 'accidental means' implies 'means' producing a result which is not the natural and

the probable consequences of such means.'' This conclusion is wholly unwarranted by the cases cited and wholly unnecessary in the case made by the record. The court immediately gets back on to the right track by adding: ''If the result, although unexpected, flows directly from an ordinary act in which the insured voluntarily engages, then such is not deemed to have been produced by accidental means.'' The court concluded that it did ''not appear that the deceased took poison by mistake or through inadvertence.'' And that, assuming that there was evidence of poison in his stomach after death, ''there is no evidence that it got there through accidental means.''

Two of the majority cases are from New York, and the law of that state is with it.

Two are from Illinois, but neither is from the court of last resort. *Hutton* v. *States Acc. Ins. Co.*, 267 Ill. 267, 108 N. E. 296, L. R. A. 1915E, 127 Ann. Cas. 1916C, 577, holds that one who assaults another and is himself injured in the fight that follows is not injured by accidental means, that he was bound to know that some injury might befall him, and that he could not recover under a policy insuring against injuries incurred through accidental means.

One of the majority's cases is from California, but not from the highest court of that state. It holds that one who voluntarily submits to ministrations by a dentist and suffers an injury from germs introduced by unsterile dental instruments, sustains an injury through accidental means. The court correctly recites the rule that requires that it be made to appear that the injury was caused by accidental means, that it is not enough that the injury should be unexpected and unforeseen, and that there must be something of an unexpected or unforeseen character in the means through which the injury was sustained. And it finds that element in the condition of the dental instruments. It purports to follow *Rock* v. *Travelers' Ins. Co.*, 172 Cal. 462, 156 Pac. 1029, 1030, L. R. A. 1916E, 1196, wherein it is said in speaking of a policy like the one in hand: ''A differentiation is made, therefore, between the result to the insured and the means which is the operative cause in producing this result.'' And further on quotes from *Clidero* v. *Scottish Acc. Ins. Co.*, 29 Scot. L. R. 303, as follows: ''The question, in the sense of this policy, is not whether death was the result of accident in the sense that it was a death which was not foreseen or

anticipated. That is not the question. The question is, in the words of this policy, whether the means by which the injury was caused were accidental means. The death being accidental in the sense in which I have mentioned, and the means which led to the death as accidental, are to my mind, two quite different things. A person may do certain acts, the result of which acts may produce unforeseen consequences, and may produce what is commonly called accidental death, but the means are exactly what the man intended to use and did use, and was prepared to use. The means were not accidental, but the result might be accidental.''

*Olinsky* v. *Ry. Mail Assn.*, 182 Cal. 669, 189 Pac. 835, 14 A. L. R. 784, was a case in which the insured, suffering from tuberculosis, attempted to swim against a strong current. His exertions brought on a hemorrhage, which recurred from time to time, and he died in about three weeks. It was held that inasmuch as he was doing exactly what he intended to do, and nothing unexpected or unintended occurred in his efforts, an accidental death was shown, but not a death by accidental means. The law of California is clearly my way.

One of the majority's cases is from Alabama. There was nothing decided in that case that has any significance here. It is true that the court said this: ''When the voluntary act of the insured caused the injury, by way of, or as the result of, unanticipated and unexpected circumstance and result, it is within the terms of the contract.'' What this obscure statement was intended to mean, I cannot imagine. But it had nothing to do with the result of the case. All that was decided was that the injury which resulted in a hernia was sustained before the issue of the policy and that it was not covered thereby.

More to the point is *Stokely* v. *Fidelity & Casualty Co.*, 193 Ala. 90, 69 So. 64, L. R. A. 1915E, 955, wherein it was held, without conceding that there was any bodily injury sustained through accidental means, that the bursting of the stiches used in closing the incision in an appendicitis case, necessitating another operation during which the patient died, could not be recovered for under the policy sued on.

One of the majority's cases is from Kentucky. It holds, as stated, that one who drinks a poisonous liquid in ignorance of its character, is injured by accidental means, and finds the fortuitous element in the ignorance referred to. But it is not to be

taken that the law of Kentucky supports the conclusion of the majority in this case. The law of that jurisdiction is thus stated in *Salinger* v. *Fidelity & Cas. Co.*, 178 Ky. 369, 371, 198 S. W. 1163, 1164, L. R. A. 1918C, 101; "It may be taken as established by the great weight of authority that an injury is not produced by accidental means within the terms of an accident insurance policy, where it is the direct, though unexpected, result of an ordinary act in which the insured intentionally engages." The case was one where the insured was blinded by the exertion of putting a box of goods upon a high shelf. An ordered verdict for the defendant was sustained. Again, in *Bahre* v. *Travelers' Protective Assn.*, 211 Ky. 435, 277 S. W. 467, 468, a case where the insured was injured while driving a car over a rough road, the court reaffirmed the above rule, by quoting it, and affirmed a judgment on a verdict ordered for the defendant.

Still again, in *Provident Life & Acc. Ins. Co.* v. *Watkins*, 256 Ky. 645, 76 S. W. (2d) 889, 891, the court quotes from the Salinger Case as above, but distinguishes the case in hand therefrom for the reason that the insured fell when he attempted to reach a whistle cord, which was the accidental means of his injury.

One of the majority's cases is from Nebraska; it supports the majority, and expresses the law of that state. The same may be said of the Washington case, cited by the majority.

The Missouri case cited by the majority, as above stated, was expressly overruled by *Caldwell* v. *Travelers' Ins. Co.*, 305 Mo. 619, 267 S. W. 907, 39 A. L. R. 56. There the insured died following an operation for a hernia. The opinion of the court contains the most painstaking and comprehensive review of the cases to be found in the books. The court reaches the conclusion that where death or injury is the unexpected result of an intentional act of the insured, without mischance, slip, or mishap connected therewith, it is not caused by accidental means. It overrules *Young* v. *Railway Mail Assn.*, 126 Mo. App. 325, 103 S. W. 557; *Beile* v. *Travelers' Protective Assn.*, 155 Mo. App. 629, 135 S. W. 497; *Columbia Paper Stock Co.* v. *Fidelity & Cas. Co.*, 104 Mo. App. 157, 78 S. W. 320, and repudiates the language of *Eicks* v. *Fidelity & Cas. Co.*, 300 Mo. 279, 253 S. W. 1029. So, out of this group of twenty-three cases, the majority is fairly entitled to count six states as supporting it. To this number may be added Wisconsin, as shown by *Wiger* v. *Mut. Life Ins. Co.*, 205 Wis. 95, 236 N. W. 534.

Now let us turn to the further authorities on which I rely. *Parker* v. *Provident Life & Acc. Co.*, 178 La. 977, 152 So. 583, 586, is a case where the insured suffered a hernia as the result of operating the lever of a jackscrew. There was no slip of hands or feet, no break or loosening of machinery to cause a sudden jerk or jar, and nothing to increase the load which he expected to lift, and he acted voluntarily. "The overwhelming weight of authority," says the court, "is to the effect that, if the means which produces the injury is intentionally, voluntarily used in the usual and expected way, the resulting injury, though unexpected, unusual, or unanticipated, is not produced by 'accidental means.' But if in the act which *precedes* the injury there intervenes something unforeseen or unexpected, or if something unusual occurs which produces the injury, then it may be said the injury resulted from 'accidental means.'" Recovery was denied. *Southard* v. *Railway Passenger Assur. Co.*, 34 Conn. 574, Fed. Cas. No. 13,182, was before Judge Shipman of the United States District Court as an arbitrator, but his carefully prepared opinion is worthy of acceptance as a judicial decision, and it is so regarded. It was a case wherein the insured suffered a hernia as the result of jumping hastily from a railroad car and running a considerable distance. There was no stumbling or slipping or falling. All the accident there was, was the result of ordinary means voluntarily employed in a not unusual way. "It would not help the matter," says the learned judge, "to call the injury itself—that is, the rupture—an accident. That was the result, and not the means through which it was effected." The claim was disallowed.

In *Smith* v. *Travelers' Ins. Co.*, 219 Mass. 147, 106 N. E. 607, L. R. A. 1915B, 812, the insured died from the effects of a nasal douche. The harm was done by the fact that he drew it too violently into his nostril, whereby it reached the Eustachian tube and was carried into the middle ear, and thence penetrated the brain through an unusual hole in the mastoid bone. The court said: "But there was nothing accidental in the inhalation of this douche. The deceased did exactly what he intended to do. This particular inhalation, though harder or more violent than usual, was not, so far as appears, harder or more violent than he intended it to be. There was no shock or surprise during the inhalation which made him draw a deeper breath than he intended to draw, nothing strange or unusual about the circumstances. The external act was exactly what he designed

it to be, though it produced some internal consequences which he had not foreseen. Accordingly there was no bodily injury effected through a means which was both external and accidental." A judgment for the defendant was affirmed.

To the same effect is *Henderson* v. *Travelers' Ins. Co.*, 262 Mass. 522, 160 N. E. 415, 56 A. L. R. 1088, where a man dove into a pool and had mastoiditis from germs received into his nose.

In *Lawrence* v. *Massachusetts Bonding & Ins. Co.*, 113 N. J. Law, 265, 174 Atl. 226, a man wrenched his back pitching quoits. There was no mishap and nothing unusual or unintentional about it except the wrench. It was held that his injury was not caused by accidental means.

In *Ramsey* v. *Fidelity & Casualty Co.*, 143 Tenn. 42, 223 S. W. 841, 13 A. L. R. 651, a case where the insured died from blood poisoning following the extraction of a tooth, the court, after reviewing the authorities followed *Stone* v. *Fidelity & Cas. Co.*, 133 Tenn. 672, 673, 182 S. W. 252, L. R. A. 1916D, Ann. Cas. 1917A, 86, and held that since there was no accidental means shown, there could be no recovery. The court said in the Stone Case: "The general rule is that an injury is not produced by accidental means, within the meaning of this policy, where the injury is the natural result of an act or acts in which the insured intentionally engages. A person may do certain acts the result of which produces unforeseen consequences resulting in what is termed an accident; yet it does not come within the terms of this contract. The policy does not insure against an injury that may be caused by a voluntary, natural, ordinary movement, executed exactly as intended. Therefore, to determine the matter, we look, not to the result merely, but to the means producing the result. It is not sufficient that the injury be unusual and unexpected, but the cause itself must be unexpected and accidental."

In *Kendall* v. *Travelers' Protective Assn.*, 87 Ore. 179, 169 Pac. 751, a barber was removing a dead hair from a customer's chin, and the wound made in the process became infected. It was held that if the wound was intentionally made the resulting injury was not caused by "accidental means," since under such a policy as was there (and here) involved liability was to be determined by causes rather than consequences.

In *Standard Acc. Ins. Co.* v. *Cherry* (Tex. Civ. App.), 36 S. W. (2d) 807, 810, the insured was injured while delivering

ice in the way usual to him. It was observed by the court that the policy limited the company's liability to injuries caused by accidental means, that there is a well-established distinction between accidental injuries and injuries resulting from accidental means; that death caused by accidental means is an accidental death, but an accidental death may or may not be the result of accidental means; that under such a policy the element of accident must consist in that which produces the injury, rather than in the mere fact that an injury occurs; that where the injury is an unexpected and unintentional result of voluntary action, there is not an injury by accidental means, though there is an accidental injury. Then the court assumes from the fact that there was an accident that there must have been some "variance unknown to him (insured) in the manner in which he handled himself in bending his body while depositing his burden. * * * There must have been some involuntary and unintentional movement, unconsciously performed, that intervened and caused the rupture of the ligaments, tissues, or membranes constituting his injury." This startling assumption was wholly unsupported by evidence and was manifestly unwarranted. But, so far as the law of this part of the opinion is concerned, it was correctly stated. *Bryant* v. *Continental Casualty Co.* (Tex. Civ. App.), 145 S. W. 636, 637, was a case of death by sunstroke. It was held that it was not a case of accidental means. I quote from the opinion: "If a result is such as follows from ordinary means, voluntarily employed and in a not unusual or unexpected way, it cannot be called a result effected by accidental means. But if in the act which precedes the injury, something unforeseen, unexpected, and unusual occurs which produces the injury, then the injury has resulted through accidental means."

In *New Amsterdam Casualty Co.* v. *Johnson*, 91 Ohio St. 155, 110 N. E. 475, L. R. A. 1916B, 1018, a man who had been out horseback riding, took a cold plunge, as he had frequently done. It resulted in a dilation of his heart. Since there was no evidence that anything occurred that he had not planned or anticipated, except the dilation, it was held that there was no accidental means shown.

In *Husbands* v. *Indiana Travelers' Acc. Assn.*, 194 Ind. 586, 133 N. E. 130, 133, 35 A. L. R. 1184, the insured ruptured a blood vessel in the lung while shaking a furnace. The sole question was whether the injury was caused by accidental

means. The opinion was given by Ewbank, C. J., whom I quote: "And the facts found fail to show that the insured slipped or stumbled, or that anything fell upon or against him, or that anything whatever that was unforeseen or not intended happened to him of an 'external, violent' nature or that he met, with an 'accident' of any kind, except that his exertion in shaking down the ashes in his furnace ruptured a blood vessel * * *." Judgment for the defendant was affirmed.

*Young* v. *Continental Casualty Co.*, 128 S. C. 168, 122 S. E. 577, 578, was a case where the insured ruptured himself when he reached for a book on a high shelf. While the case was reversed on the ground that an issue of fact should have been submitted, the court said: "So, if a person suffering from some weakness or disease should subject himself to conditions which would not injuriously affect persons of ordinary health, but should be dangerous to him, and injury result, it would not be due to an accidental cause."

There are many Federal Reporter cases that support me in this dissent; and, as the Supreme Court of the United States has now affirmed the rule as therein stated, I may properly cite them as authorities. I shall refer to only a few of them. *Shanbery* v. *Fidelity & Casualty Co.* (C. C. A. 8), 158 Fed. 1, 5, 19 L. R. A. (N. S.) 1206, is of especial interest because it was decided by the same court—not the same judges, but including (now) Mr. Justice Van Devanter—that decided *Western Com. Travelers' Assn.* v. *Smith* (C. C. A.), 85 Fed. 401, 40 L. R. A. 653, much relied upon by courts holding with the majority. In that case, one who was covered by a policy containing the "accidental means" clause, assisted in carrying a heavy door from one building to another, and thereby ruptured his "fatty" heart. The court disregarded the Smith Case, and said: "It would not help the matter to call the injury itself—that is, the rupture of the heart—an accident. That was the result, and not the means through which it was effected. Carrying the door, or, after putting it down, the act of filling his lungs with air by drawing a long breath, was the means by which the injury was caused. Both were done by the assured voluntarily, and in an ordinary way with no unforeseen, accidental, or involuntary movement of the body whatever. There was no stumbling, slipping, or falling; there was nothing accidental in his movements, any more than there would be in walking on the street, or passing down the steps of his house, during each of which he might

have filled his lungs by drawing a long breath, and ruptured his heart.'' Recovery was denied.

*McCarthy* v. *Travelers' Ins. Co.*, 8 Biss. 362, Fed. Cas. No. 8602, was the case of one injured by the use of Indian clubs. The court said: ''If he voluntarily used them (the clubs) in the ordinary way for taking such exercise, without the occurrence of any unusual circumstance interrupting or interfering with such use, or causing any unforeseen, accidental or involuntary movement of the body, and in such use of the clubs there occurred a rupture of a blood vessel and consequent injury as claimed, I do not think it then could be said that the means through which the injury was effected were accidental. But, if while engaged in such exercise there occurred any unforeseen, accidental or involuntary movement of the body of the deceased, which, in connection with the use of the clubs, brought about the injury; or, if there occurred any unforeseen or any unexpected circumstance which interfered with or obstructed the usual course of such exercise, and there was thereby produced an involuntary movement, strain or wrenching, by means of which the injury was occasioned, that would be an accident within the spirit of the policy; that is, the means by which the injury was effected would in such case be accidental.''

*United Commercial Travelers* v. *Shane* (C. C. A. 8), 64 Fed. (2d) 55, 58, is cited by the federal Supreme Court in the Landress Case. It was a case wherein the insured died from the effects of a local anaesthetic. In the opinion, the court quotes from the Barry Case as follows: ''If in the act which precedes the injury something unforeseen, unexpected, unusual, occurs, which produces the injury, then the injury has resulted * * * through accidental means.''

*Lincoln Nat. Life Ins. Co.* v. *Erickson* (C. C. A. 8), 42 Fed. (2d) 997, 1001, is another case cited by the Court in the Landress Case. ''In the case at bar,'' says the Court, ''the deceased was insured, not against accidental results of intended means, but against death resulting from bodily injury effected directly through external, violent, and accidental means.''

In further support of my views reference may be had to 5 Joyce on Insurance, § 2863, Richards on Insurance, § 391, Vance on Insurance, 875, and Kerr on Insurance, 383.

The majority attempts to sustain its conclusion by the syntax of the Barry Case. It says that the clause ''in a not unusual or unexpected way,'' relates to and modifies the word ''follows.''

This cannot be. The majority refers to *Caldwell* v. *Travelers' Ins. Co.*, 305 Mo. 619, 267 S. W. 907, 39 A. L. R. 56, which makes the phrase referred to modify the word "employed." This view was expressed by Hon. William Marshall Bullitt, once a distinguished Solicitor General of the United States, in a scholarly and convincing address delivered before the Association of Life Insurance Counsel, on December 7, 1927. (3 Asso. Life Ins. Counsel, Appendix), in which he expressed views in complete accord with mine. The fallacy of the majority's reasoning appears when the whole statement of the court is taken into account. The part quoted by the majority is not a completed statement of the charge approved by the Supreme Court. In its entirety it is this: The court below correctly instructed the jury, that "if a result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means; but that if, in the act which precedes the injury, something unforeseen, unexpected, unusual, occurs which produces the injury, then the injury has resulted through accidental means." This last proposition would be wholly unnecessary and pointless if the first one means what the majority says it does.

But there is now no reason or excuse for discussing the syntax or meaning of the Barry Case. Any possible doubt regarding it has been dispelled by *Landress* v. *Phoenix Mut. Life Ins. Co.*, 291 U. S. 491, 78 L. ed. 934, 54 Sup. Ct. 461, 90 A. L. R. 1382, hereinbefore referred to. That case was that of a man who suffered a sunstroke while playing golf. The Court held, Mr. Justice Cardozo alone dissenting, that the death of the insured did not result from "accidental means." "But it is not enough to establish liability under these clauses," says Mr. Justice Stone, speaking for the Court, "that the death or injury was accidental in the understanding of the average man—that the result of the exposure 'was something unforeseen, unsuspected, extraordinary, an unlooked for mishap, and so an accident,' * * * for here the carefully chosen words defining liability distinguish between the result and the external means which produces it. The insurance is not against an accidental result. The stipulated payments are to be made only if the bodily injury though unforeseen, is effected by means which are external and accidental." The opinion indorses the Barry Case, and says that the distinction between accidental means and accidental result has been generally recognized. That the Barry

Case means just what I claim for it is thus made apparent. For, if the case meant what the majority says it does, the result of the Landress Case would have been the other way.

Tested by the cases I have cited, and many others to be found in the books, it becomes apparent by the record that it was reversible error to refuse to instruct the jury as requested by the defendant.

It remains to consider whether it was error to submit the case to the jury.

The burden of proof was, of course, on the plaintiff, and, since the phrase "by violent and accidental means" defines the defendant's liability, she was required to establish the fact that the accident on account of which she is suing was so caused. What mishap attaching to the *means* of this accident did she give evidence of? There is but one possible answer, none. There is not a scintilla of evidence that anything unexpected, unintended, or fortuitous intervened to affect the insured's intention, between the time he raised his axe and the time it came into contact with the wood he was at work upon. No slip, no catching of the axe on anything over his head, nothing to divert his attention or the course of the blow he was striking. Everything connected with his act worked as he intended, and there was nothing about it that was accidental except the result—the flying of the chip or stick.

There was nothing to go to the jury, and a verdict should have been ordered for the defendant.