HELEN B. CLARK *v.* EMPLOYERS' LIABILITY ASSURANCE COMPANY.

October Term, 1897.

Present : ROSS, C. J., TAFT, ROWELL, MUNSON, TYLER and THOMPSON, JJ.

Opinion filed November 30, 1900.

*Ascertainment of facts by evidence wholly circumstantial—Legitimate scope of inquiry—Reception of evidence not rendered error by ultimate development of immateriality*—It being necessary in a suit on an accident insurance policy to ascertain the cause of the death of the insured from evidence wholly circumstantial, it was proper to receive evidence of every fact that entered into the situation at the time of the catastrophe, and if it ultimately appeared that some such facts were so controlling as to make it certain that other attending circumstances, of which evidence was received against objection, had nothing to do with the catastrophe, error could not be attributed to the court in having permitted the inquiry to take the range above indicated.

*Evidence by deposition—Exclusion of irresponsive hearsay not specifically objected to*—It appearing from a deposition that a part of an answer was not responsive to the question put and was hearsay, it was proper on trial to exclude so much of the answer as appeared to be hearsay, although no specific objection was made thereto at the taking of the deposition.

*Admissibility of a party's evidence must be apparent when offered*—Evidence which might have tended to show that an ancestor of the insured did not die of heart disease had no tendency when standing alone to show that he did die of apoplexy, and such evidence offered when there was no evidence in the case as to the manner of the ancestor's death was properly excluded.

*Examination of witnesses—Unnecessary embodiment of irrelevant and prejudicial matter in a question*—It is improper in questioning a witness to assume or state a fact which is unnecessary to the inquiry and which is irrelevant and prejudicial.

*Parties to actions—Action on insurance policy—Beneficiary may sue*—When the undertaking in an insurance policy is to pay to a beneficiary named, the beneficiary may maintain a suit on the policy.

*Motion for verdict on the whole evidence overruled*—There being evidence in this case tending to sustain the plaintiff's declaration, a motion for a verdict in favor of the defendant on the whole evidence was properly overruled. The evidence so tending is reviewed in the opinion.

*Cause of action to be proved as alleged*—In an action on an accident insurance policy the plaintiff cannot recover on proof that the insured's death resulted from an accident substantially different from the one set out in the declaration.

*Unnecessary allegation of relevant matter to be proved*—In an action on an insurance policy matters material and relevant to the injury received must be proved as alleged, although they were unnecessarily alleged. It is only when matter unnecessarily alleged is wholly foreign and irrelevant to the cause of action or is repugnant to what has gone before that it can be rejected as surplusage.

*Rule applies to matter alleged under a restrictive or explanatory videlicet*—The necessity of proof of material matters alleged is not affected by the fact that they are alleged under a videlicet that is merely restrictive and explanatory of a preceding general allegation, and not in any way inconsistent with it.

*Relevant and consistent allegations under a videlicet traversed by the general issue*— The general issue is sufficient to traverse and put in issue any unnecessarily particular averments of relevant and consistent matter alleged under a videlicet.

*Construction of insurance contract—"Indirectly" not synonymous with "partly"*— In an accident insurance policy which does not insure against death occasioned wholly or partly, directly or indirectly, by disease, the right of recovery is narrowed by the use of the word indirectly.

*Evidence ground for opposing inferences of fact—Right to instruction applicable to facts found established—No waiver by not objecting for variance*—The plaintiff's evidence, wholly circumstantial, being such as to afford ground for opposing inferences as to whether the insured's death resulted from an injury received in the manner alleged in the declaration, or from an injury received in a different manner, the defendant, by not objecting to the evidence on the ground of variance, did not waive the right to have the jury instructed to the effect that the plaintiff could not recover if they found that the insured died from an injury received in a different way from that alleged in the declaration.

*Death caused directly and wholly by external violence may be indirectly caused by disease*—If, as some of the evidence tended to show, the insured, in conse-

quence of spontaneous apoplexy, fell before an approaching wagon, and, while in a helpless condition so caused, was crushed to death by its wheels, his death was caused indirectly by the apoplectic stroke, although it was caused directly and wholly by the crushing.

GENERAL AND SPECIAL ASSUMPSIT, in which the plaintiff as beneficiary sought to recover upon a policy of accident insurance upon the life of Barma A. Clark, her husband. Pleas, the general issue and a special plea setting out that the insured came to his death from spontaneous or natural apoplexy. Trial by jury, Windham County, September Term, 1896, *Start*, J., presiding. Verdict and judgment for the plaintiff. The defendant excepted.

On September 30, 1895, the dead body of the insured was found lying in a highway in the Town of Brattleboro. When last seen alive he was apparently in good health and was about starting upon a drive with a loaded team. The evidence as to his death was wholly circumstantial.

The result of an autopsy on his body was given in evidence, and the expert testimony of physicians was introduced by both parties. There was evidence of apoplexy, the plaintiff claiming that the apoplexy was the result of an injury, was traumatic apoplexy, and the defendant claiming that the apoplexy was not caused by any injury but was natural or spontaneous apoplexy.

The evidence introduced by the defendant tended to show that the mother of the insured died from apoplexy and that a brother of the insured had suffered an apoplectic shock from which he afterwards recovered. The defendant introduced in evidence the deposition of Dr. Daniel Campbell, one question in which was " Whether you remember the occasion of his [the insured's] maternal grandfather's death?" The answer was: " That would be Atherton Hall. Yes, I remember he had no physician, he went out to milk one morning and was gone longer than usual and was found dead in the yard." The court excluded that part of the answer following the word " Yes." The deponent testified that he had been Atherton Hall's family physician,

and was asked the question, "Whether you ever knew of his having had any heart trouble?" His answer was "No." This question and answer were excluded.

At the close of the evidence the defendant moved that a verdict be directed in its favor for that upon the whole evidence the plaintiff was not entitled to recover.

The defendant excepted to the failure of the court to comply with certain of its requests to charge and to the charge as given with respect to the subject matter thereof. These requests and the portion of the charge material to the exceptions appear from the opinion.

*Waterman, Martin & Hitt* and *Kittredge Haskins* for the plaintiff.

*John Lowell* and *Clarke C. Fitts* for the defendant.

MUNSON, J. The insured was found lying dead in the road, where the wheels of his wagon had evidently passed over his neck. He was seen by no one from the time he started until after his death, and his movements could be ascertained only from evidentiary circumstances. There was a watering-trough beside the road he had passed over, placed at a level which required the unchecking of a horse to enable it to drink. The body was found about twenty feet from this trough, and the horse a short distance further on. There were tracks which indicated that the horse had been brought up to the trough, and that the deceased was upon the ground at that point. There was also evidence of tracks leading from the vicinity of the trough to the location of the body, along that side of the road on which the trough stood, and a little way from the tracks made by the horse. There was nothing in the position or character of the tracks, as described by the witnesses, that indicated haste or struggle. The body lay upon its back, with feet extended toward the highway ditch. The horse was checked up when found, but the case discloses nothing as to the position of the reins.

In connection with these matters the court permitted the plaintiff to show that the horse had a habit of starting off suddenly after stops of the character indicated, and that it was hard-bitted. The defendant insists that the tracks and the position of the body, as located by undisputed testimony, left no room for an inference that the insured's fall was caused by his horse, and that consequently this evidence as to the horse should have been excluded. If the question were to be passed upon as presented by counsel, it would doubtless be held that the circumstances referred to were neither developed with such precision, nor of a character so controlling, as to require the exclusion of other circumstances having a natural connection with the fact to be proved. But we think the defendant is not entitled to put the question upon this narrow ground. The cause of the insured's death was to be ascertained from evidence entirely circumstantial. The jury were entitled to the aid of every fact that entered into the situation of the deceased at the time of his catastrophe. The scope of legitimate inquiry included, not only the strength and activity of the man, the steepness of the grade, the character and condition of the surface, the style of the wagon and the amount of the load, but the disposition and habits of the horse in matters affecting its conduct and management under such circumstances. These facts were all material to the inquiry; and the admission of any of them against the defendant's objection could not put the court in error, even if it ultimately appeared that some of the others were so controlling as to render it certain that those objected to had nothing to do with the catastrophe.

The court properly excluded so much of Dr. Campbell's answer to interrogatory five as related to the manner of Atherton Hall's death. It is fairly apparent from the answer, especially when read in connection with other parts of the deposition, that it was hearsay. But counsel contend that if there was any uncertainty in regard to this, the adverse party should have called attention to it at the time of taking by a specific objection,

so that the uncertainty could have been removed by further inquiry. We think, however, that it was the duty of the party taking the testimony to see that enough appeared to show its competency, and that a specific objection before the magistrate was not required to entitle the plaintiff to raise this question on trial.

The question as to Atherton Hall's having had any heart trouble called for a matter of fact and not of opinion; and it is possible that the mere fact that the family physician did not know of his having had heart disease was evidence tending to show that he did not have it. But it is not necessary to inquire as to this; for the fact that Atherton Hall did not die of heart disease was not material, unless the circumstances were such that proof that he did not die of heart disease would tend to show that he died of apoplexy; and the previous answers as to the manner of his death having been excluded, it was not error to exclude this. It does not appear that there was any evidence then in the case as to the manner of Atherton Hall's death.

One Childs testified to a conversation had a few days after the insured's death with William B. Clark, a son of the deceased and a witness for the plaintiff, in which Clark spoke of his father's having recently had dizzy spells and trouble with his head. Childs was an insurance agent, representing companies which had risks on the deceased; and he was cross-examined at some length for the purpose of showing his interest. In the course of this examination, he was asked if he did not take an active part in the matter from the time of the insured's death until the time of the trial, or until his company settled. Upon objection being made the question was withdrawn, whereupon an exception was noted to the asking of the question; and it is now objected that the last clause of the question embodied an inadmissible fact, the use of which was altogether unnecessary to the purpose of the examination. It is, in truth, difficult to see how it became necessary to make use of this fact in showing the interest of the witness. Plaintiff's counsel insist that the question was harmless

because it did not indicate whether the interest of his company was by way of an accident policy or a life policy. But in a later stage of the cross-examination questions were asked which tended strongly to solve the doubt. The court has heretofore indicated its purpose that cases shall not be tried upon irrelevant and prejudicial matters improperly brought before the jury by question or argument. It is doubtless true that the objectionable features of questions of this character are sometimes due to inadvertence, and that this must be taken into consideration in determining the proper application of the rule to an exception of this character. But as the case stands it is not necessary to consider the matter further.

The defendant's motion that a verdict be directed in its favor, for that upon the whole evidence no right of recovery was shown, was properly overruled. It is claimed, first, that the evidence excludes the possibility that the insured's fall was caused by his horse. It is said that the position of the body and the location of the tracks show conclusively that he was not struck by the horse or shaft. But if this be conceded, it does not follow that the horse had no connection with the fall; and the allegation that the deceased was cast or thrown upon the ground did not confine the plaintiff to proof of a direct blow. In the absence of any evidence as to the reins, they may be presumed to have been left as reins are usually left under such circumstances. The evidence that the tracks of the deceased were a little way from those made by the horse did not preclude the possibility that as the horse was leaving the vicinity of the trough the deceased seized the nearest rein at some point alongside the horse, and that this connection was maintained until he fell. In view of this, it cannot be said to have been impossible for a reasonable man to conclude from all the evidence that the insured's fall was due to some movement of his horse.

It is also claimed that the evidence does not show a right of action in the plaintiff. The defendant is not entitled to raise this question under his general motion, but it may properly be

disposed of in view of the necessity of another trial.   The undertaking of the policy is to pay the principal sum to the plaintiff, and this entitles her to maintain the suit.   *Davenport* v. *Northeastern Mutual Life Asso.* 47 Vt. 528.

The declaration alleges that the insured's death "resulted from bodily injuries alone, and through external, violent and accidental means, to wit: that he was accidentally cast or thrown upon the ground by his team so that the back of his head near the base of the brain struck on the hard earth or stone with great force, and the wheels of his heavily loaded wagon passed across his neck and chest, so that by means of said accidental bodily injuries solely, and from no other cause, his death was then and there caused."   The defendant's first request was for a charge that the plaintiff could not recover unless the jury found that the "insured came to his death solely through external, violent and accidental means, and from bodily injuries alone, received in the particular manner and upon the particular parts set forth in the declaration;" the request concluding with the words of the videlicet.   The fifth request was "that the plaintiff cannot recover if the jury find that the insured came to the ground in any other way than by being cast or thrown there by his team, although they find that his death was thereafter caused by his wagon running over him."   The defendant, if entitled to the substance of the first request, was probably not entitled to a charge in its exact language, for it would be sufficient if the injuries were received substantially as alleged.   But the fifth request presents the question argued, and is not open to this verbal objection.   Neither request was complied with.

The defendant is not precluded from relying upon these requests by the fact that the evidence was not objected to, nor by the fact that the language used did not present the matter in the light of a variance.   The failure to object was not a waiver, for the circumstantial evidence offered had some tendency to establish the allegations of the declaration when given the legal effect

30

claimed by the defendant.  The real contention is not that the allegations were wholly unsupported, but that the charge permitted the jury to return a verdict for the plaintiff without finding them established.  The requests were designed to secure an instruction that would preclude the return of a verdict for the plaintiff, unless the jury found the facts which the defendant claimed were essential to a recovery.  The question raised is whether the plaintiff could recover upon proof that the insured's death resulted from an accident different from the one set forth in the videlicet.

It was sufficient for the plaintiff to allege that the insured's death resulted solely from bodily injuries, sustained through external, violent and accidental means, without setting out the particulars of the accident which caused his fatal injuries.  But those particulars, although not necessary to be alleged, were material to the inquiry ; and if particulars thus material are unnecessarily alleged, they must be proved substantially as stated. It is only when the matter unnecessarily stated is wholly foreign and irrelevant to the cause, or is repugnant to what goes before, that it can be rejected as surplusage.  The pleader cannot relieve himself from the necessity of proving unnecessary allegations of relevant matter by putting them under a videlicet. The proper office of a videlicet is to particularize or explain what goes before it.  It may restrain the generality of preceding words, but cannot enlarge nor diminish the preceding subject-matter.  In the former case it is merely explanatory of the language which precedes it, while in the latter it is repugnant to it.  When a material videlicet is preceded by words of direct averment, the videlicet is regarded as a direct allegation, and therefore as traversable ; and being regarded as traversable, it follows that if traversed it must be proved.  Gould, Plead. ch. 3. secs. 35-41 ; 1 Chitt. Plead. 228, 229, 317, 318, 392, 611.  *Derragon* v. *Rutland,* 58 Vt. 128 (135); *Stukely* v. *Butler,* Hob. 175 ; *Knight* v. *Preston,* 2 Wils. 332 ; *Gleason* v. *McViker,* 7

Cow. 41; *Hastings* v. *Lovering*, 2 Pick. 214; 2 Saund. P. II. 291 a.

The videlicet in this case is merely restrictive and explanatory of the preceding general allegation, and is in no way inconsistent with it. It is an unnecessarily particular statement of relevant matter, and not a statement foreign to the inquiry. In connection with the preceding general averment, it sets forth that the insured's death resulted from bodily injuries caused by his being accidently thrown upon the ground by his team. The matter is such that it makes one complete and consistent allegation, and the plaintiff's claim that the general issue traversed only the matter contained in the general averment cannot be sustained. The plaintiff could not recover under this declaration without showing that the deceased was thrown to the ground by his team; but this being established, she could recover whether death was caused by a blow from the team, by the concussion of the fall, or by the crossing of the wheels substantially as alleged. This statement renders a specific reference to the second, third and fourth requests unnecessary. The failure of the court to confine the jury to the allegations of the declaration requires a reversal of the case.

The remaining question involves a construction of the policy. The policy did not insure against death occasioned wholly or partly, directly or indirectly, by disease or bodily infirmity. The defendant requested a charge that the plaintiff could not recover if the death was caused wholly or partly by disease or bodily infirmity, and this was complied with. The defendant also requested a charge that the plaintiff could not recover, even if the death was found to have been caused by accident, if it was also found that disease or bodily infirmity contributed in any degree thereto. This request was apparently framed to secure an instruction upon the phrase "directly or indirectly," but it may be doubted whether the word "degree" was such as to give it the force intended. If not, the question as to the effect of the words "directly or indirectly" was

not saved.  But the request has been treated as presenting this question, and under the circumstances it may properly be given that effect without further examination.

The court stated the inquiry to be whether the deceased died solely by reason of the injuries received by the accident—whether the accident was the direct cause of the death ; referred to the plaintiff's claim that the apoplexy causing the death was produced by the accident, and to the defendant's claim that the apoplexy was the result of natural causes ; and charged that the plaintiff must show that an accidental injury was the direct cause, or the sole cause, of the death, and that he could not recover if the death was caused wholly or in part by disease or bodily infirmity.  The request above set forth was not complied with unless a compliance can be found in this instruction.

The circumstantial evidence bearing upon the cause of the insured's death presented the question whether he was stricken with spontaneous apoplexy and fell in a place where the wheels passed over him, or whether he accidentally fell where the wheels passed over him and suffered apoplexy as a result of the injuries received.  The defendant contends that if the insured fell before the wheels because of an apoplectic fit, not sufficient to cause death, and was killed by the pressure of the wheels, it might truly be said that his death was caused directly and wholly by the accident, and yet the case be within the exception of the policy.  A few authorities are referred to in elucidation of this claim.

In *Winspear* v. *The Accidental Insurance Co.* 6 Q. B. Div. 42, and in *Lawrence* v. *Accidental Insurance Co.* 7 Q. B. Div. 216, the company was held liable for accidental deaths which would not have occurred but for fits of apoplexy.  But the exceptions in the policies there construed did not contain the word " indirectly" nor an equivalent expression, and the reasoning advanced in support of the decisions indicates that if there had been such a provision the result would have been different.  In *Manufacturers' Accident Indemnity Co.* v. *Dorgan* 7 C. C. A.

581, the facts presented the same situation, and the policy was like the one in suit; and upon a review of the cases above cited, it was considered that the word "indirectly" broadened the exception and required a different conclusion.

We think the view of the Circuit Court of Appeals is correct. The policy does not insure against an accidental death which is caused indirectly by disease. If the insured's fall was caused by disease, that disease was the cause of his death within the meaning of the exception. His helpless plight in the tracks of the approaching wheel was due to the apoplectic stroke, and to that alone. An accidental death by crushing is caused indirectly by disease, if the person falls in the place of danger because of disease. The death is caused directly and wholly by the crushing, but it is nevertheless caused indirectly by the disease. It was necessary for the plaintiff to show, not only that the injury received was the direct cause of death, but that disease did not indirectly cause the death by subjecting the insured to that injury. The charge failed to present this view to the jury.

*Judgment reversed and cause remanded.*