## BUSH v. ORDER OF UNITED COMMERCIAL TRAVELERS OF AMERICA.

### No. 75.

Circuit Court of Appeals, Second Circuit.

Jan. 8, 1942.

Barber & Barber, of Brattleboro, Vt. (F. Elliot Barber, Jr., of Brattleboro, Vt., of counsel), for appellant.

Osmer C. Fitts, of Brattleboro, Vt., for appellee.

Before L. HAND, AUGUSTUS N. HAND, and C. E. CLARK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The plaintiff's husband, Frank L. Bush, died on August 16, 1939, under the following circumstances: He had been fishing in the ocean in a boat or dory, and upon returning about 8:30 A. M. slipped in getting out of the dory and fell backwards on some rocks. He immediately complained of being a little dizzy and was helped to his tent by his companions, a matter of about a hundred feet. He then lay down and rested for a time. Around 11 A. M. on the same day, after his rest, he drove his automobile about a mile into town on an errand, being accompanied by one Fontaine, who testified for the plaintiff at the trial. The decedent was about fifty-six years of age and appeared to be robust and in good health at the time of the accident. Fontaine left the car to do the errand, and when he returned about ten minutes later found Bush slumped over the wheel of his automobile and dead.

Dr. Kinghorn, who performed an autopsy, testified that he opened up the heart and found it nearly full of post-mortem blood clots. On a little further scrutiny he found an antemortem clot approximately an inch or an inch and a half long. He said that the cause of death was an embolism of the right auricle, that the clot was due to chronic cystitis, that is an inflammation of the bladder, which he found very hard and small, showing that it had been inflamed for a long time. He explained that as a natural result little pieces would break off the inflamed surface which might pass off with the urine or might be picked up by the vessels. If they were picked up by the venous vessels they would have to enter the vena cava, because that was the only way out, and would thus get into the heart. The blood clot he said caused death; that it moved because of the fall.

Dr. Cook, who participated in the autopsy and saw the clot removed from the right side of the heart, testified that it was "not what I think of as a post-mortem clot. That is, it is a very firmly organized clot and retained its shape with teasing." He also testified that the clot, lodged where it was, caused the insured's death, and that it being lodged in the heart, connected with the fall, would pre-suppose some injury or infection in the vessels of the legs or pelvis or abdomen, that clots might be present in the veins around such a diseased bladder, and that a fall or violence suffered, as explained to have been suffered by the insured, might have the effect in connection with this clot of dislodging it, thereby causing an embolism of this character. Under cross-examination he testified that the clot was of some age and made the following answer to this question:

"Q. So that an accident, if any, occurring not more than three or four hours prior to the time you first saw the body

could not, in your opinion, have been the sole cause of the clot, as you have described it, being where you described it?

"A. Perhaps the cause of it being where it is described and not the cause of the clot forming. I don't mean to hedge."

The effect of the testimony seems to have been that the decedent was a man apparently strong, active and in good health, but who because of a condition of chronic cystitis, which was not known to himself or his friends, developed a blood clot which through the jar occasioned by the fall was set loose, moved into the right auricle of the heart and caused death.

The plaintiff is the beneficiary under an accidental death benefit certificate issued by the defendant on the life of her husband, Frank L. Bush, which entitled him to "the benefit under this certificate for death due to accidental means alone, and independent of all other causes." It fixed such benefit at $6,300 which by a rider upon the policy was reduced from $6,300 to $5,000. The constitution of the defendant (which was incorporated by reference in the certificate) insured members against death "effected solely through accidental, violent and external means, herein termed the accident, which shall be occasioned by said accident alone and independent of all other causes."

At the close of the plaintiff's evidence in the action brought by her to recover on the policy, the defendant moved the court to direct a verdict in its favor on the ground that she had not made out a cause of action under the insurance contract. The motion was granted, a judgment entered for the defendant upon a verdict directed as prayed for, from which this appeal is taken. We think the direction was right and that the judgment should be affirmed.

It would seem clear that if the requirement of the policy that recovery can only be had "for death due to accidental means alone and independent of all other causes" be taken literally the presence of a large blood clot, which was moved into the auricle as a result of the jar, was a contributing cause of death and that accordingly death did not arise from "accidental means alone." It is true that there are numerous decisions that similar clauses do not prevent recovery where an insured is only subject to a congenital weakness or frailty such as a thin skull, but if we go so far as to say that a disease without which the accident would not have happened was not a contributing cause simply because it was immediately activated by the accident, the express contract of the parties becomes of no effect.

The plaintiff principally relies upon the opinion of Cardozo, Ch. J., in Silverstein v. Metropolitan Life Ins. Co., 254 N.Y. 81, 171 N.E. 914. The policy there insured against results of bodily injuries "caused directly and independently of all other causes by accidental means" and provided that it was not to cover death "caused wholly or partly by disease or bodily or mental infirmity or medical or surgical treatment therefor."

"The insured, while lifting a milk can into an ice box, slipped and fell, the can striking him on the abdomen and causing such pain that he was unable to get up. A surgeon, opening the abdomen, found a perforation at the junction of the stomach and the duodenum, through which the contents of the stomach escaped into the peritoneum, causing peritonitis and, later, death. At the point of perforation there had been a duodenal ulcer, about the size of a pea. The existence of this ulcer was unknown to the insured, and, were it not for the blow, would have had no effect upon his health, for it was dormant and not progressive, or so the triers of the facts might find. Even so, there had been a weakening of the wall in some degree, with the result that the impact of the blow was followed by perforation at the point of least resistance."

The court held that the evidence sustained a finding that the ulcer was not a disease or an infirmity within the meaning of the policy and said:

"* * * Left to itself, it would have been as harmless as a pimple or a tiny scratch. Only in the event that it was progressive would it become a source of pain or trouble. If dormant, as it was found to be, it was not only harmless in itself, but incapable of becoming harmful except through catastrophic causes, not commonly to be expected. In a strict or literal sense, any departure from an ideal or perfect norm of health is a disease or an infirmity. Something more, however, must be shown to exclude the effects of accident from the coverage of a policy. The disease or the infirmity must be so consider-

able or significant that it would be characterized as disease or infirmity in the common speech of men. * * *

"A distinction, then, is to be drawn between a morbid or abnormal condition of such quality or degree that in its natural and probable development it may be expected to be a source of mischief, in which event it may fairly be described as a disease or an infirmity, and a condition abnormal or unsound when tested by a standard of perfection, yet so remote in its potential mischief that common speech would call it not disease or infirmity, but at most a predisposing tendency."

Judge Cardozo then quotes from Rugg, C. J., in Leland v. Order of United Commercial Travelers, 233 Mass. 558, 564, 124 N.E. 517, who is said to have stated the governing principle "with clearness and precision." Chief Justice Rugg (at page 564 of 233 Mass., at page 520 of 124 N.E.), said:

"If there is no active disease, but merely a frail general condition, so that powers of resistance are easily overcome, or merely a tendency to disease which is started up and made operative, whereby death results, then there may be recovery even though the accident would not have caused that effect upon a healthy person in a normal state."

Judge Cardozo goes on to say: "An ulcer as trivial and benign as an uninfected pimple is at most a tendency to an infirmity, and not an infirmity itself."

Whatever may be thought of regarding a duodenal ulcer as "trivial and benign," the assumption of the court was that such an ulcer had not given rise to a disease in any practical sense. We cannot say the same thing about a blood clot in a vein leading to the heart. Such clots are notoriously and frequently causes of death and the clot afflicting the decedent Bush was a large one originating in a diseased bladder and lodged in the vena cava. To hold that a fall (no more severe than the one here) was a cause of death independent of the decedent's abnormal condition seems to disregard the plain meaning and purpose of the clause limiting the recovery of the insurance.

Appellant argues that the Vermont decisions govern the present cause and support her right to recover upon the policy. But such is not our understanding of their effect. Two of those relied on are Cor-

sones, Adm'r, v. Monarch Accident Ins. Co., 103 Vt. 379, 154 A. 693, and Griswold v. Metropolitan Life Ins. Co., 107 Vt. 367, 180 A. 649. The policy involved in the first case insured the decedent against loss of life resulting directly and independently of all other causes from bodily injuries effected solely through accidental means. The policy further provided that disability resulting wholly or partly from hernia should be considered as sickness and indemnified under the sickness provisions of the policy, whatever the original cause. The plaintiff's evidence indicated that the decedent, a waiter in a restaurant, suffered a traumatic hernia as the result of a fall while carrying a tray of dishes. Recovery upon the policy was sought and allowed by the Supreme Court of Vermont on the ground that the decedent's death was caused by accidental means within the meaning of the contract. There can be no doubt about the result reached by the Vermont Court, for the fall of the waiter was the cause of the hernia and the hernia occasioned the death of the insured. It might have been different if the fall had aggravated a preexisting hernia and the fall and the hernia had together effected the death of the insured.

In Griswold v. Metropolitan Life Ins. Co., 107 Vt. 367, 180 A. 649, a policy insured against "the results of bodily injuries" "caused directly and independently of all other causes by violent and accidental means." As the decedent there was chopping wood, a stick flew up and hit him in the nose. He afterwards died from septic infection originating at the spot where the stick struck him. The infection did not precede the accident but was set up by it. The infection and death were not independent of the accident but initiated by it. Recovery was accordingly allowed.

There is nothing in the two Vermont cases we have discussed bearing on the case at bar. In Clark v. Employers' Liability Assurance Co., 72 Vt. 458, 48 A. 639, the policy excluded death occasioned wholly or partly, directly or indirectly, by disease or bodily infirmity. The insured fell because of a stroke of apoplexy and was run over, and it was held that there was no liability, because the plaintiff had not shown that the decedent's sclerotic diseased condition did not cause death. It is argued that the Clark decision differs because the word "indirectly" used in the policy there was broader than the words "due to ac-

cidental means alone and independent of all other causes." We can see no practical difference and regard the Clark decision as directly in favor of the defendant's position.

In Aetna Life Insurance Co. v. Ryan, 2 Cir., 255 F. 483; Order of the United Commercial Travelers v. Nicholson, 2 Cir., 9 F.(2d) 7 and Commercial Travelers Mut. Acc. Ass'n v. Fulton, 2 Cir., 79 F. 423, recovery was denied under circumstances closely resembling the present.

While the line is often difficult to draw between congenital infirmity or weakness of old age and diseases accelerated by accidents, we think that such a dangerous and abnormal physical defect as the existence of a large blood clot lodged in a vein leading to the heart brings the present case within the latter category and therefore that the death of the decedent did not arise through "accidental means alone."

Judgment affirmed.

C. E. CLARK, Circuit Judge (dissenting).

The medical evidence showed that the ante-mortem clot "had been there for some time"; and in the posture of the case as it was when it was taken from the jury, they might reasonably have found that, but for the fall, the deceased would have continued to live indefinitely. Hence the fall is—in Justice Cardozo's felicitous phrase —"an accident in the common speech of men";[1] and purchasers of accident insurance would hardly expect that latent heart trouble, unknown to anyone and only to be brought out by an accident, would be a complete bar as a matter of law. The logic of this conclusion must apply inevitably to all conditions contributing to death, such as ulcers, whether benign or malignant, or even nearsightedness which might have caused a fall leading to death.

As might be expected with·respect to insurance contracts which may easily amount to traps for the uninitiated, there are conflicting interpretations of such policies. Yet here again Judge Cardozo has pointed the way, in Silverstein v. Metropolitan Life Ins. Co., 254 N.Y. 81, 171 N.E. 914, by an approach which would make of this present issue a problem of fact, and not of law. Moreover, many of the seemingly conflicting precedents may be reconciled with his conclusion by noting that they also contain what counsel for defendant adroitly labels "the redundant clause," which adds to the policy provision here in suit the further limitation "and not directly or indirectly, wholly or in part, due to disease or infirmity." Such a clause, far from being "redundant," puts the purchaser on direct notice that latent defects of the human body may prevent recovery. The policies in the three earlier cases from this Circuit cited in the majority opinion herein were of this restricted type. The point has not been passed upon in Vermont, but it seems likely that the Silverstein case will be followed there. In Clark v. Employers' Liability Assur. Co., 72 Vt. 458, 48 A. 639, the Vermont supreme court distinguished two English cases which had allowed recovery for the very reason that the English insurance policies did not contain the more restrictive coverage excluding death caused even "indirectly" by disease. These English cases, Winspear v. Accident Ins. Co., 6 Q.B.D. 42, and Lawrence v. Accidental Ins. Co., 7 Q.B.D. 216, each involved an insured who had apoplexy while crossing a stream, with the result that he was drowned. In view of the Vermont court's adherence to the rule of liberal construction of insurance policies, Corsones v. Monarch Acc. Ins. Co., 103 Vt. 379, 154 A. 693; Griswold v. Metropolitan Life Ins. Co., 107 Vt. 367, 180 A. 649, the beneficiary should have the benefit of any doubt here, at least to take her case to the jury, who may, of course, find the death not due to accidental means. After all, it was the insurance company which chose not to sell the more restricted form of policy.

---

[1] Dissenting in Landress v. Phœnix Mut. Life Ins. Co., 291 U.S. 491, at page 498, 54 S.Ct. 461, at page 463, 78 L.Ed. 934, 90 A.L.R. 1382, to the point that sunstroke is death by accidental means, a dissent widely quoted and often asserted to be the majority view. Cf. Huss v. Prudential Ins. Co. of America, D.C. Conn., 37 F.Supp. 364, 365.